UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUN OWNERS OF AMERICA, INC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, <br><br> Defendant. | Civil Action No. 21-2919 (ABJ) |

**DEFENDANT'S EXPEDITED MOTION FOR PROTECTIVE ORDER
AND MEMORANDUM IN SUPPORT**

Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), by and through undersigned counsel, respectfully requests that this Court enter a protective order to shield from dissemination, disclosure, and use of exempt Freedom of Information Act ("FOIA") material inadvertently produced to Plaintiff in response to the FOIA request underlying the present litigation. ATF further respectfully requests expedited briefing and consideration of this motion.[1]

On Wednesday, September 6, 2023, in the thirteenth and final release made by ATF, the agency mistakenly produced to Plaintiff's counsel a PDF file consisting of 115 pages, virtually all of which contained unapplied redactions of material exempt under FOIA. Declaration of Ginae Barnett ("Barnett Decl.") ¶ 8. The inadvertently produced PDF file contains hundreds of red boxes surrounding text that was intended to be redacted. *Id*. ¶ 7. When a user moves the cursor above the red box, the box changes to black and the specific FOIA exemption provision is noted. *Id*. However, the redactions are not made permanent until the user presses the "Apply" button to

---

[1] Pursuant to Local Civil Rule 7(m), Government counsel consulted with Plaintiff's counsel, who advised that Plaintiff opposes the motion.

finalize the redaction. *Id*. The file produced to Plaintiff's counsel did not have the intended redactions finalized. *Id*. This was obvious to Plaintiff's counsel, who on Friday, September 8, 2023, emailed the undersigned Government counsel and ATF personnel asking for a "redacted version of the final Production #13." *Id*. ¶ 9, Attachment B.

Counsel's email alerted ATF to the inadvertent production. Within thirteen minutes of that email, undersigned Government counsel asked Plaintiff's counsel to "please delete" the inadvertent production. *Id*., Attachment C. Within 23 minutes, ATF sent a new version of the 115-page production with the redactions finalized and again requested that the inadvertently produced file be deleted. *Id*., Attachment D. ATF followed up again on Sunday, September 10, 2023, asking Plaintiff's counsel to "confirm in writing that [he] deleted any copy of the inadvertent production." *Id*. ¶ 10, Attachment E.

Unfortunately, despite the obvious mistake, neither Plaintiff nor its counsel has agreed to delete the inadvertently produced file. On Monday, September 11, 2023, Plaintiff's counsel wrote that he "[did] not have time today to consider much less respond to this request to delete what I was sent," even though counsel was taking the time to send an email asking for a draft of the September 12, 2023, joint status report to consider. *Id*. ¶ 11, Attachment F. Of course, the request to delete the inadvertent production, which was made three days prior, does not require much consideration, for it is obvious from the hundreds of unapplied redactions that counsel is in possession of material that was intended to be withheld as exempt pursuant to 5 U.S.C. § 552(b)(3), (6), (7)(C), 7(D), and/or (7)(E). Government counsel advised that if Plaintiff would not confirm deletion of the inadvertently produced file, then ATF would plan to move for a protective order. *Id*.

On September 12, 2023, Government counsel received an email from a new attorney stating that he would be representing "Plaintiffs and Mr. Olson with respect to" the planned motion for protective order. *Id*. ¶ 12, Attachment H. In that email, this attorney references "our review of these documents" and makes assertions regarding what they believe these documents "reveal," which suggests that since the inadvertent production and the request to delete the mistakenly sent file, there has been dissemination and use of the exempt material. *Id*.

Plaintiff's response therefore prompts ATF to move to compel protection of the claimed exempt material from further dissemination, disclosure, or use by Plaintiff or its counsel. As numerous courts have ruled, including ones in this District, this Court possesses inherent power to protect inadvertently disclosed FOIA matter pending a resolution of the merits of challenges, if any, to the claimed exemptions. If ATF prevails on the merits of its claim that the material in question is shielded from public disclosure under FOIA Exemptions 3, 6, 7(C), 7(D), and/or 7(E), the Court should then order Plaintiff and its counsel to destroy all copies of the inadvertently produced material obtained from ATF's inadvertent production.

**BACKGROUND**

What follows is brief background on the FOIA request and the exemptions being claimed.

On April 28, 2021, Plaintiff Gun Owners of America submitted a FOIA request seeking records regarding ATF's use of the National Instant Criminal Background Check System ("NICS"). *See* Compl. (ECF No. 1) ¶¶ 6, 8. NICS is operated and maintained by the Federal Bureau of Investigation ("FBI"), and ATF may obtain information from NICS for law enforcement activities. Barnett Decl. ¶ 14.

On November 5, 2021, Plaintiff invoked this Court's jurisdiction to allegedly "compel compliance" with the FOIA. Compl. at 1. Since then, ATF has been producing largely the same

type of record—a request by the ATF to obtain information from FBI NICS for civil or criminal law enforcement activities related to the Gun Control Act or the National Firearms Act. Barnett Decl. ¶ 13. There is typically an email from ATF personnel to FBI personnel with a standard form completed by ATF agents. *Id*. ¶ 13, Attachment I. The form contains personally identifying information about the subject of ATF's criminal investigation and details about the suspected criminal violation. *Id*. ¶ 15. The investigative details may include information furnished by witnesses or confidential sources. *Id*.

As summarized in the Barnett Declaration, ATF has made limited redactions of the responsive records to withhold information that it believes is exempt under various FOIA exemptions. For example, ATF has redacted the names and contact information of law enforcement pursuant to Exemptions 6 and 7(C). *Id*. ¶¶ 21-26. Under the same exemptions, ATF has redacted the personally identifying information of the subjects of its investigation, including birth dates and social security numbers. *Id*. ¶ 25. Where necessary, ATF has also redacted pursuant to Exemption 7(D) confidential source information and under Exemption 7(E) specific law enforcement procedures and techniques referenced in the investigative details or otherwise noted on the form. *Id*. ¶¶ 23, 27-28. Finally, ATF has redacted under Exemption 3 information originating in ATF's Firearms Tracing System ("FTS") database, which Congress protected from disclosure. *Id*. ¶¶ 17-20; *see* Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609–10 (2011) (codified at 18 U.S.C. § 923 note) (the "2012 Tiahrt Rider").

## ARGUMENT

FOIA does not specifically provide for the compelled return or destruction of inadvertently produced documents. *See generally* 5 U.S.C. § 552. Nonetheless, federal courts possess inherent

powers that may be employed in instances of the inadvertent production of claimed exempt FOIA material.  "It has long been recognized that federal courts possess certain implied or inherent powers that 'are necessary to the exercise of all others.'  Inherent powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *United States v. Moussaoui*, 483 F.3d 220, 236 (4th Cir. 2007) (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812), and *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *accord Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017); *see also Pub. Citizen Health Rsch. Grp. v. FDA*, 953 F. Supp. 400, 405 (D.D.C. 1996) (citing *Gumbel v. Pitkin*, 124 U.S. 131, 146 (1888), in support of "the court's power to regulate the use of information or documents, obtained through means other than discovery, in a proceeding before the court").  ATF asks that the Court exercise its inherent powers to protect the orderly and appropriate disposition of issues in this FOIA litigation.

"Those inherent powers are routinely used to bar parties from disseminating information inadvertently disclosed in FOIA proceedings, at least temporarily."  *Wilson v. FCC*, Civ. A. No. 21-895 (RMM), 2022 WL 4245485, at *14 (D.D.C. Sept. 15, 2022) (citing cases).  In *Wilson*, the court granted in part the motion for protective order filed by the FCC and ordered that "[plaintiff] and her counsel shall not disclose, disseminate, or make use of the Inadvertent Disclosure" pending resolution of the challenge to FCC's withholdings.  *Id*. at *16.

In an earlier case, a judge in this District similarly ordered that a FOIA plaintiff "not use or disseminate any of the information contained in the [inadvertently disclosed record]" or "assist others in using or disseminating this information during the pendency of this case."  *Pub. Citizen*, 953 F. Supp. at 406.  The Court reasoned that it "will control the information at issue until it determines whether it qualifies for non-disclosure pursuant to exemption four of FOIA."  *Id*.

at 404.  Logically, "[i]f the information is not subject to disclosure under [an] exemption" then "it should not be publicly available."  *Id*.  But until final decisions could be made on the appropriateness of the exemptions, the court employed its inherent power to protect its judicial proceeding.

In *Human Rights Defense Center v. U.S. Park Police*, Civ. A. No. 19-1502 (TSC), 2023 WL 5561602, at *6 (D.D.C. Aug. 29, 2023), the Court ordered the plaintiff "not to disclose, disseminate, or make use of" names "covered by Exemption 6."  It sensibly ruled that "there is no discernible public interest in having the names of private citizens disclosed."  *Id*.  The same is true here, where the inadvertently disclosed material includes the names, social security numbers, and birth dates of subjects of ATF criminal investigations and the names, email addresses, and phone numbers of law enforcement personnel.  *See also Piper v. Dep't of Justice*, 294 F. Supp. 2d 16, 27 n.5 (D.D.C. 2003) ("[T]he Court expects plaintiff to deliver [an inadvertently produced photograph that could have been withheld under FOIA Exemption 7(C)] to [the government] if [the government] so request[s]."), *aff'd on other grounds*, 222 F. App'x 1 (D.C. Cir. 2007).

Beyond this District, the defendant in *ACLU v. Department of Defense*, Civ. A. No. 09-8071, 2012 WL 13075284 (S.D.N.Y. Mar. 20, 2012), mistakenly included copies of a document that contained classified information concerning the threat classification of military detainees.  *Id.*  After concluding that this document was "properly classified under FOIA Exemption 1"—which protects, among other things, classified national security information—the court exercised its inherent authority to direct the plaintiffs "to return all copies of the Document in their possession" to the agency.  *Id.* at *5; *see also Rocky Mounty Wild, Inc. v. U.S. Forest Serv.*, Civ. A. No. 18-3065, 2019 WL 3067319 (D. Co. July 12, 2019) (exercising its inherent authority in ordering plaintiff to "return, destroy, or permanently delete all copies" of the inadvertent FOIA production

and to "not file, refer to, or use the inadvertently produced versions of the documents in this proceeding or any other proceeding before any tribunal or agency").

Here, Plaintiff has yet to challenge any of the exemptions invoked by ATF. But if it does so, ATF believes it is likely to succeed in showing that the material intended to be redacted is properly exempt. The Barnett Declaration provides a brief summary of the redacted material and the applicable FOIA exemptions. But the purpose of the instant motion is not to litigate such challenges as the parties would through fulsome summary judgment but to simply preserve the claimed exemptions as if there was no inadvertent production at least until the Court can decide the merits of any FOIA challenges. There is no logical reason to treat the information mistakenly left unredacted in Production 13 differently than the exact same information redacted in the previous twelve productions.

In sum, public disclosure should be decided by the Court whose jurisdiction Plaintiff invoked in this lawsuit and not unilaterally by Plaintiff or its counsel by exploiting an administrative mistake. If Plaintiff challenges any of ATF's exemptions in the inadvertently produced records and ATF prevails on the merits of the challenge, or if Plaintiff chooses not to challenge any of ATF's exemptions in the inadvertently produced records (thereby implicitly conceding it (or its counsel) possesses information that should not be publicly available), the Court should then order Plaintiff and its counsel to destroy all copies the 115-page inadvertent production.[2] In the interim, before such decisions are made, ATF respectfully submits that the Court should order Plaintiff and its counsel, until further order by this Court, to (1) sequester the

---

[2] As a practical matter, deletion of the inadvertent production is the most protective action, which is why ATF made that request within minutes of learning of the inadvertent production. Unless Plaintiff takes the position that every redaction is not properly exempt and prevails in a challenge to every redaction, then Plaintiff (or its counsel) is retaining non-public information that should be destroyed.

September 6, 2023, inadvertently produced records and the contents of those records; and (2) not disseminate, disclose, or use for any purpose those records or the contents of those records.

## CONCLUSION

While ATF takes its FOIA obligations seriously, FOIA processors, as with all professionals and human beings, make rare, inadvertent mistakes. The Court has the power to correct those mistakes when an agency exercises diligence upon discovering them. To hold otherwise would require perfection from agencies, prompting them to spend more time on each FOIA request and slowing the overall availability and release of information to the public. For the foregoing reasons, the Court should grant ATF's Motion for Protective Order.

Dated: September 13, 2023                Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

*/s/  Sean Tepe*
SEAN M. TEPE, DC Bar #1001323
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2533
sean.tepe@usdoj.gov

*Counsel for the United States of America*