UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUN OWNERS OF AMERICA, INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>Defendant. | Civil Action No. 21-2919 (ABJ) |

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), by and through undersigned counsel, moves for summary judgment in this action, which arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In support, Defendant relies on the accompanying Memorandum of Law, Statement of Material Facts as to Which There Is No Genuine Dispute, and declarations of Ginae E. Barnett and Michael G. Seidel.

Dated: December 8, 2023

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

 /s/ Sean Tepe
SEAN M. TEPE, D.C. Bar #1001323
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2533

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUN OWNERS OF AMERICA, INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>Defendant. | Civil Action No. 21-2919 (ABJ) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), supported by consulting agency Federal Bureau of Investigation ("FBI"), by and through undersigned counsel, respectfully submits this memorandum in support of its motion for summary judgment pursuant to the Court's November 16, 2023, Minute Order.

As the Court noted in its Minute Order, the only remaining issue in dispute concerns ATF's thirteenth production of responsive records consisting of a single PDF file of 115 pages. Plaintiffs "do not intend to challenge the exemptions invoked with respect to redactions made" in this thirteenth production or the twelve other productions. ECF No. 31 at 2. "[B]ut at the same time, [Plaintiffs] are still seeking access to the documents" in the thirteenth production inadvertently produced without redactions permanently applied and "that are subject to the Protective Order" currently in place. Nov. 16, 2023, Minute Order. Because the redactions intended to be applied in the inadvertent production on September 6, 2023, and actually applied in the replacement production sent on September 8, 2023, are properly covered by various FOIA exemptions, ATF

respectfully submits that summary judgment should be granted and that the existing Protective Order should remain in place.

## BACKGROUND

On April 28, 2021, Robert J. Olson, on behalf of Gun Owners of America and Gun Owners Foundation, submitted to ATF a FOIA request for certain records related to ATF's use of the National Instant Criminal Background Check System ("NICS") and specifically ATF's requests to the FBI for "NICS monitoring" in support of ATF's criminal investigations. Compl. (ECF No. 1), Ex. A. On November 5, 2021, Plaintiffs filed the complaint in this matter to "compel compliance" with the FOIA. *Id*. at 1.

ATF conducted a search that returned 4,559 potentially responsive documents. Second Declaration of Ginae Barnett ("2d Barnett Decl."), ¶ 6. Responsive records were released through a total of thirteen productions. *Id*. On September 6, 2023, ATF sent Plaintiff's counsel an encrypted email with what was intended to be the final, thirteenth production of 115 pages. *Id*. ¶ 8. Inadvertently, ATF sent a file consisting of 115 responsive pages from which information exempt from FOIA was marked for redaction on behalf of both ATF and the FBI but did not have the redactions permanently applied. *Id*. ¶¶ 7-8. Plaintiffs have agreed that ATF had made a "production contain[ing] FOIA redactions that were indicated, but not actually made." ECF No. 28 at 2. The Second Barnett Declaration provides additional detail about ATF's redaction process.

On September 8, 2023, Plaintiff's counsel requested a revised redacted version of Production 13, which alerted ATF to the fact of the inadvertent production. 2d Barnett Decl. ¶ 9. Within 30 minutes, both ATF and counsel for the Government requested that the inadvertently produced file be deleted, and 10 minutes later ATF provided Plaintiff's counsel with a properly redacted replacement production. *Id*. A copy of the entire redacted thirteenth production is enclosed as Attachment I to the Second Barnett Declaration.

When Plaintiff declined to delete the inadvertently produced file, ATF moved for a protective order to "preserve the claimed exemptions as if there was no inadvertent production at least until the Court can decide the merits of any FOIA challenges." ECF No. 20 at 7. Upon the completion of briefing, the Court ordered that, "until further order of this Court, plaintiffs and their counsel (1) shall sequester the September 6, 2023, inadvertently produced FOIA records and the contents of those records, and (2) shall not disseminate, disclose, or use for any purpose those records or the contents of those records." ECF No. 30 at 4.

Subsequently, in a Joint Status Report, Plaintiffs stated that they "do not intend to challenge the exemptions invoked with respect to redactions made" in any of the thirteen productions. ECF No. 31 at 2. Yet Plaintiffs expressed their desire to be relieved of the restraints of the protective order. *Id*. The Court observed that although "there is little in dispute with respect to the merits of this FOIA action," summary judgment briefing should occur so that the Court can determine if the claimed redactions in the inadvertent production "are not properly covered by an exemption and should be disclosed" and whether to continue the protective order. Nov. 16, 2023, Minute Order.

The vast majority of the redactions seek to withhold pursuant to FOIA Exemptions 6 and 7(C) personally identifiable information of the investigative subjects of ATF's investigations, third party individuals mentioned in the records, and ATF and FBI agents and personnel associated with the criminal investigations or the requests for NICS monitoring. 2d Barnett Decl. ¶ 23-29; Declaration of Michael G. Seidel ("Seidel Decl.") ¶¶ 11-20. ATF also redacted, pursuant to Exemption 7(D), the identity of confidential sources who provided tips to ATF. 2d Barnett Decl. ¶ 25. Pursuant to Exemption 3, ATF redacted information derived from ATF's Firearms Tracing System database, which Congress has directed not be publicly disclosed. *Id*. ¶ 17-22. Pursuant to

Exemption 7(E), ATF redacted references to specific law enforcement techniques and sources used in support of ATF's investigations. 2d Barnett Decl. ¶ 30-31.

## LEGAL STANDARDS

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Jud. Watch, Inc. v. Dep't of Hous. & Urban Dev.*, 20 F. Supp. 3d 247, 253 (D.D.C. 2014) (citation omitted); *see also Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment."). A court reviews an agency's response to a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B). "The defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. Dep't of Just.*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).

## ARGUMENT

**I.     THE INADVERTENT PRODUCTION CONTAINS INFORMATION EXEMPT FROM DISCLOSURE UNDER FOIA**

**A.     ATF Properly Claimed FOIA Exemption 3**

Exemption 3 protects information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). To justify withholding under Exemption 3, a statute must either (i) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establish particular criteria for withholding or refer to particular types of matters to be withheld. *Id.*

Pursuant to Exemption 3, ATF redacted information derived from ATF's Firearms Tracing System database, which was used to respond to the NICS monitoring request form's request for information about why ATF's subject is under investigation. 2d Barnett Decl. ¶ 19. In a series of

appropriations riders, Congress has directed that "during the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the [ATF]." *See* Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609–10 (2011). This public law gives ATF no discretion in disclosing information from the Firearms Trace System database, but even were ATF to have such discretion, there are foreseeable harms associated with disclosure. Public release of firearms trace information would risk compromising law enforcement investigations and damage relationships with federal firearms licensees who provide crucial and time-sensitive information in firearm investigations. 2d Barnett Decl. ¶¶ 20-22.

Courts have repeatedly held that this public law provision gives ATF no discretion to publicly disclose the contents of the Firearms Trace Systems database and that the public law serves as a proper basis for invoking FOIA Exemption 3. *See Cooper v. Dep't of Just.*, Civ. A. No. 99-2513 (RBW), 2022 WL 602532, at *27 (D.D.C. Mar. 1, 2022); *Michael v. Dep't of Just.*, Civ. A. No. 17-0197 (ABJ), 2018 WL 4637358, at *8-9 (D.D.C. Sept. 27, 2018); *Abdeljabbar v. ATF*, 74 F. Supp. 3d 158, 172-77 (D.D.C. 2014); *Higgins v. Dep't of Just.*, 919 F. Supp. 2d 131, 145 (D.D.C. 2013); *McRae v. Dep't of Just.*, 869 F. Supp. 2d 151, 163 (D.D.C. 2012); *Singh v. FBI*, 574 F. Supp. 2d 32, 45-46 (D.D.C. 2008); *Miller v. Dep't of Just.*, 562 F. Supp. 2d 82, 111-12 (D.D.C. 2008); *Watkins v. ATF*, Civ. A. No. 04-800, 2005 WL 2334277, at *1 (D.D.C. Sept. 1, 2005); *but see Fowlkes v. ATF*, 67 F. Supp. 3d 290, 300-01 (D.D.C. 2014). Accordingly, ATF properly withheld from disclosure information derived from ATF's Firearms Tracing System database.

**B.     ATF Properly Claimed FOIA Exemptions 6 and 7(C)**

ATF and the FBI properly withheld a variety of personally identifying information contained in the records pursuant to Exemptions 6 and 7(C). Both exemptions require a balancing of the individual's right to personal privacy against the public's interest in shedding light on an agency's performance of its statutory duties. Exemption 7(C), however, provides broader protection because the agency need only show that the information could reasonably be expected to constitute an unwarranted invasion of privacy. *Beck v. Dep't of Just.*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

       1.     Exemption 7 Threshold

FOIA Exemption 7 protects from mandatory disclosure "records or information compiled for law enforcement purposes," to the extent that disclosure could result in one of the six harms enumerated in subparts (A) through (F) of the exemption. *See* 5 U.S.C. § 552(b)(7). As such, judicial review of an agency's withholding under FOIA Exemption 7 "requires a two-part inquiry." *FBI v. Abramson*, 456 U.S. 615, 622 (1982). First, the relevant information must have been "compiled for law enforcement purposes." *Id*. A record is compiled for law enforcement purposes if: (1) the activity that gives rise to the documents is related to the enforcement of federal laws or the maintenance of national security; and (2) the nexus between the activity and one of the agency's law enforcement duties is based on information sufficient to support at least a "colorable claim" of its rationality. *See Keys v. Dep't of Just.*, 830 F.2d 337, 340 (D.C. Cir. 1987); *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982); *Blanton v. Dep't of Just.*, 63 F. Supp. 2d 35, 44 (D.D.C. 1999). Courts assume that "criminal law enforcement agency" records were for law enforcement purposes because government agencies "typically go about their intended business," and courts apply a "more deferential attitude toward [their] claims of 'law enforcement purpose.'" *Pratt*, 673 F.2d at 418-19. ATF is such a law enforcement agency "with a statutory mandate to enforce

federal firearms laws," and the records at issue were "created as part of criminal investigations to enforce those laws." 2d Barnett Decl. ¶ 24. The FBI is "the primary investigative agency of the federal government" and the records at issue involved information "ATF is authorized to obtain information from the NICS for civil or criminal law enforcement activities." Seidel Decl. ¶¶ 9-10. The Exemption 7 threshold is satisfied.

    2.    Exemption 7(C)

Exemption 7(C) applies to records or information compiled for law enforcement purposes "that could be reasonably expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) requires the agency and the reviewing court to weigh the public interest in the release of information against the privacy interest in nondisclosure. *See Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989). It is settled that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants. *See Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003). The D.C. Circuit has "adopted a categorical rule" that "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *Id.*; *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991).

    a.    *Third parties of investigative interest*. ATF withheld the personally identifiable information of third parties who were of investigative interest. 2d Barnett Decl. ¶ 27. This includes the investigative subject's name, date of birth, place of birth, social security number, address, and/or driver's license number. *Id*. The FBI also redacted the "FBI Number," which is an "unique identifying number assigned by the FBI to a particular identity of someone under investigation." Seidel Decl. ¶¶ 17-18. "There can be no clearer example of an unwarranted

- 7 -

invasion of personal privacy than to release to the public that another individual was the subject of a law enforcement investigation." *People for the Ethical Treatment of Animals ("PETA") v. Nat'l Insts. of Health*, 745 F.3d 535, 542 (D.C. Cir. 2014) (cleaned up).  Disclosure of such identifying information could result in "stigmatization" and "harassment" while "not, itself, appreciably increas[ing] the public's understanding of ATF's operations and activities."  2d Barnett Decl. ¶ 29.  Therefore, ATF and the FBI concluded that there was no public interest sufficient to override these individuals' substantial privacy interests.  *Id.*; see also Seidel Decl. ¶ 19.  Accordingly, the personally identifiable information of third parties who were of investigative interest may be withheld under Exemption 7(C).  *See, e.g., Sandoval v. Dep't of Just.*, 296 F. Supp. 3d 1, 18-19 (D.D.C. 2017); *Amuso v. Dep't of Just.*, 600 F. Supp. 2d 78, 95-97 (D.D.C. 2009).

      b.    *Third parties mentioned in records*.  ATF also withheld the names of third parties tangentially mentioned in responsive records, including family members, friends, and associates.  2d Barnett Decl. ¶ 15.  These individuals with no substantive role in the investigation maintain a substantial privacy interest in not being connected with ATF or law enforcement investigations, which can carry a negative connotation and create potential suspicion.  *Id*. ¶ 29.  ATF concluded that disclosure of their identities would not increase the public's understanding of its work and would not outweigh these third-party individuals' substantial privacy interests.  *Id.*; *see, e.g., Sandoval*, 296 F. Supp. 3d at 18-19; *Amuso*, 600 F. Supp. 2d at 95-97.

      c.    *Law enforcement personnel*.  ATF and the FBI withheld the names and other identifying information (phone numbers, email addresses) of their agents and staff.  2d Barnett Decl. ¶ 15; Seidel Decl. ¶ 14.  Specifically, ATF redacted personally identifying information for agents and personnel involved in its criminal investigations and requests for NICS monitoring.  2d

Barnett Decl. ¶ 27-29. Similarly, the FBI withheld the names and identifying information for FBI Special Agents, who generally do not get to pick their assignments and may be subject to unwanted questioning or scrutiny, hostility, or retaliation. Seidel Decl. ¶¶ 14-15. The FBI also redacted the names and identifying information of FBI professional staff responsible for the "handling of requests by the ATF for NICS monitoring" and who "could become targets of harassing inquiries for unauthorized access to investigations if their identities were released." *Id*. ¶ 16.

The identities of these ATF and FBI agents and personnel would not themselves significantly increase the public's understanding of either agency's work, and therefore both ATF and the FBI concluded that there was no public interest sufficient to override the privacy interests of these individuals. 2d Barnett Decl. ¶ 29; Seidel Decl. ¶¶ 14-16; *see also Dillon v. Dep't of Just.*, 444 F. Supp. 3d 67, 99-101 (D.D.C. 2020) (ruling Exemption 7(C) covered "both FBI personnel and non-FBI government employees"); *Dorsett v. Dep't of Treasury*, 307 F .Supp. 2d 28, 39 (D.D.C. 2004) (classifying the names of individuals, including the names of FBI agents and local law enforcement personnel, as the "type of information . . . routinely considered protected by Exemption 7(C)").

    3.  <u>Exemption 6</u>

Courts also find that "third-party identifying information" may be protected under Exemption 6, which permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see, e.g., Kowal v. Dep't of Just.*, 490 F. Supp. 3d 53, 69-71 (D.D.C. 2020). The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a

particular individual."); *Gov't Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).

In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. DOJ*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492.

ATF and the FBI undertook the same balancing analysis under Exemption 6 that they had when applying Exemption 7(C), and appropriately reached the same conclusion that there was no apparent public interest that significantly outweighed the privacy interest of the third-party investigative subject, persons mentioned in law enforcement records, and law enforcement personnel. 2d Barnett Decl. ¶ 29; Seidel Decl. ¶¶ 13-20. As courts have determined in similar cases, it was appropriate to rely on Exemption 6 to withhold the personally identifiable information in the 115-page production. *See, e.g., Dillon*, 444 F. Supp. 3d 67, 96-101 (D.D.C. 2020) (finding Exemption 6 applied to redactions of personally identifying information of FBI personnel and third parties mentioned in FBI records).

### C. ATF Properly Claimed FOIA Exemption 7(D)

In two instances, ATF redacted the name of a confidential source. Exemption 7(D) prevents disclosure of records compiled by law enforcement during a criminal investigation if producing the records "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). In the words of the D.C. Circuit, "[i]f the [agency's] production of criminal investigative records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished by' such a source, that ends the matter, and the FBI is entitled to withhold the records under Exemption 7(D)." *Roth v. Dep't of Just.*, 642 F.3d 1161, 1184-85 (D.C. Cir. 2011). "Unlike Exemptions 6 and 7(C), Exemption 7(D) requires no balancing of public and private interests." *Id.*; *see also Billington v. Dep't of Just.*, 301 F. Supp. 2d 15, 22 (D.D.C. 2004) ("Exemption 7(D) has long been recognized as affording the most comprehensive protection of all FOIA's law enforcement exemptions.").

To determine if the source is indeed a confidential one, courts examine "whether the particular source spoke with an understanding that the communication would remain confidential." *Dep't of Just. v. Landano*, 508 U.S. 165, 172 (1993). The understanding can be either be express or implied, the latter occurring "when certain circumstances characteristically support an inference of confidentiality." *Id.* at 177. One of the relevant circumstances is the existence of an "ongoing relationship" between the source and the law enforcement agency. *Id.* at 179. Another relevant consideration is the nature of the crime being investigated. *Id.*

Here, ATF's declarant has averred that ATF redacted the names of confidential sources during ATF criminal investigations. 2d Barnett Decl. ¶ 25. The is effectively confirmed by the redacted documents themselves, because the two Exemption 7(D) withholdings are found in the section of the NICS monitoring form that asks why the subject is under criminal investigation and

how ATF gained its information. *Id*. ¶ 25 n.3, Attachment I. The sources were entities that provided "tips" regarding firearms transactions under an implied assurance of confidentiality. *Id*. ¶ 25. This may be inferred from the fact that the sources had an ongoing relationship with ATF, which itself could spur retaliation, as from the fact that the investigated crime concerns firearms. *Id*. In sum, these withholdings are covered by Exemption 7(D).

### D. ATF Properly Claimed FOIA Exemption 7(E)

Exemption 7(E) protects from disclosure records or information compiled for law enforcement purposes when production of such records or information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E)'s requirement that disclosure risk circumvention of the law 'sets a relatively low bar for the agency to justify withholding.'" *Pub. Emps. for Env't. Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 204-05 (D.C. Cir. 2014) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)).

As noted above, there is no dispute that the relevant records and information were compiled for law enforcement purposes. Some of the records refer to specific law enforcement techniques and sources (e.g., databases) that were used to obtain information in support of the various ATF investigations, and therefore ATF claimed Exemption 7E to redact such information. 2d Barnett Decl. ¶ 31. Logically, the information regarding law enforcement techniques protected under Exemption 7E, and the redactions thereof, are found in the sections of the form asking for how ATF knows certain information and why a certain individual is an investigatory subject. *Id*. ¶ 31 n.4, Attachment I. If these techniques were disclosed, it could enable subjects of ATF's investigations to thwart those law enforcement efforts. *Id*. ¶ 31. Therefore, it was proper for ATF to redact this information. *See Dillon v. Dep't of Just.*, 102 F. Supp. 3d 272, 297-98 (D.D.C. 2015)

(concluding that information "revealing the manner in which the FBI utilizes a particular database" to develop leads and gather information is exempt under (b)(7)(E)).

### E. ATF Disclosed Reasonably Segregable Information

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information, 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The segregability obligation was satisfied because both ATF and FBI conducted line-by-line examinations of the records in order to identify all reasonably segregable non-exempt information. 2d Barnett Decl. ¶ 32; Seidel Decl. ¶ 26. *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371-72 (D.C. Cir. 2020) (noting that government agency's "line-by-line review" of documents in responding to FOIA request was sufficient as to segregability responsibilities). Compliance with the segregability requirement is further demonstrated by the redacted production itself, which shows interspersed redactions among mostly unredacted text. 2d Barnett Decl., Attachment I; *see also Jett v. FBI*, 241 F. Supp. 3d 1, 14 (D.D.C. 2017) (concluding that "by simply reviewing the redacted records the court can easily discern that the FBI conducted a line-by-line segregation review"); *Bigwood v. Dep't of Def.*, 132 F. Supp. 3d 124, 150 (D.D.C. 2015)

(reasoning that the release of record "with interspersed redactions" served to "demonstrate[e] that [agency] conducted a line-by-line review to ensure that it provided all reasonably segregable information").

### F. ATF Satisfies the Foreseeable Harm Requirement

Under 5 U.S.C. § 552(a)(8)(A)(i)(I), an agency may withhold information only if it "reasonably foresees that disclosure would harm an interest protected by" one of the FOIA exemptions. This is an "independent" burden on the agency that may be demonstrated on a "category-by-category basis." *Rep. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021).

In certain contexts, the foreseeable harm analysis cannot be a basis for disclosure. For example, the foreseeable harm requirement does not require "disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3)." 5 U.S.C. § 552(a)(8)(B); *see also Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*, Civ. A. No. 18-2622 (ABJ), 2021 WL 4502106, at *22 (D.D.C. Sept. 30, 2021). Thus, the information redacted pursuant to Exemption 3 in the 115-page file cannot be disclosed.

In some cases, the foreseeable harm requirement may be met if "'the very context and purpose of' the withheld material 'make[s] the foreseeability of harm manifest.'" *Amiri v. Nat'l Sci. Found.*, Civ. A. No. 20-2006 (TNM), 2021 WL 4438910, at *13 (D.D.C. Sept. 28, 2021) (alteration in original) (quoting *Rep. Comm. for Freedom of the Press*, 3 F.4th at 372). When Exemption 7(C) is invoked, for example, the justifications for non-disclosure generally are also sufficient evidence of foreseeable harm. *See Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 65-66 (D.D.C. 2021); *Wash. Post Co.*, 2021 WL 4502106, at *22. Both agencies evaluated and

explained the foreseeable harm associated with disclosure of the personally identifiable information that was redacted.

Likewise, in the Exemption 7(E) context, judges in this District have determined that the foreseeable harm analysis overlaps with the analysis used to demonstrate a risk of circumvention of the law resulting from disclosure. Accordingly, "[t]he proper assertion of 7(E) goes a long way to show the risk of foreseeable harm from disclosure." *Kendrick v. FBI*, Civ. A. No. 20-2900 (TNM), 2022 WL 4534627, at *10 (D.D.C. Sept. 28, 2022); *see also Buzzfeed, Inc. v. Dep't of Homeland Sec.*, 610 F. Supp. 3d 139, 148 (D.D.C. 2022) (stating "no further foreseeable harm analysis is needed because 'Exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm'") (quoting *Reps. Comm. of Freedom of the Press v. CBP*, 567 F. Supp. 3d 97 (D.D.C. 2021)); *100Reporters v. Dep't of State*, 602 F. Supp. 3d 41, 83 (D.D.C. 2022) (finding agency met foreseeable harm requirement by satisfying "circumvention of the law" requirement). As explained above and in the Second Barnett Declaration, there are foreseeable harms associated with a disclosure of law enforcement techniques and sources that were used as part of the ATF criminal investigations evidenced in the thirteenth production.

In sum, ATF has satisfied its burden on establishing foreseeable harm from disclosure.

## II.   The Protective Order Should Remain

To the extent Plaintiffs would argue that the September 6, 2023, inadvertent disclosure constitutes a waiver of ATF's claimed exemptions, Plaintiffs would be mistaken. It is true that an agency cannot claim an exemption for records or information that is already in the "public domain." Yet what is in the public domain is only that which is "is truly public" or "preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999) (citing *Niagara Mohawk Power Corp. v. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999)). That is, "specific information that is already in the public domain due to official disclosure." *Mobley v. CIA*, 806

F.3d 568, 583 (D.C. Cir. 2015) (citing *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)); *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (requiring that the requested information was already "made public through an official and documented disclosure").

In contrast, a "simple clerical mistake in FOIA processing" does not constitute an official public disclosure. *See Mobley v. CIA*, 806 F.3d 568, 583-84 (D.C. Cir. 2015) (concluding that a "simple clerical mistake in FOIA processing" does not constitute an official acknowledgment and waiver of a *Glomar* response). ATF's September 6, 2023, production was essentially a "clerical mistake" where the "redout" file with the unapplied redactions was mistakenly sent instead of the permanently "redacted" file. 2d Barnett Decl. ¶¶ 7-8. Plaintiffs have acknowledged that on September 6, 2023, counsel received a "production contain[ing] FOIA redactions that were indicated, but not actually made." ECF No. 28 at 2. Immediately upon being alerted to the inadvertent production, ATF produced the permanently redacted file. 2d Barnett Decl. ¶ 9. Therefore, the circumstances of the September 6, 2023, disclosure clearly and indisputably demonstrate that it was inadvertent and not an intentional public disclosure that would place the material in the public domain or waive ATF's rights to invoke exemptions under the FOIA. *See Amiri v. Nat'l Sci. Found.*, No. 21-5241, 2022 WL 1279740, at *1 (D.C. Cir. Apr. 28, 2022) (affirming sealing of inadvertently disclosed records where plaintiff "has not demonstrated that [agency] waived its right to invoke an applicable FOIA Exemption by inadvertently producing unredacted documents").

Further, the actions of ATF cannot waive the FBI's exemption claims. The D.C. Circuit has re-affirmed that "disclosure by one federal agency does not waive another agency's right to assert a FOIA exemption." *Mobley*, 806 F.3d at 583; *Frugone v. CIA*, 169 F.3d 772, 774-75 (D.C.

Cir. 1999) (upholding the CIA's *Glomar* response despite official disclosure of the same information by the Office of Personnel Management).

Importantly, the redactions made under Exemptions 6 and 7(C) concern the privacy interests of third parties and, because those "interests belong to the individuals, not to the agency," ATF could not have waived those interests through an inadvertent production. *Amiri*, 2021 WL 4438910, at *8 ("an agency's inadvertent disclosure of individual names and other [personally identifiable information] rarely waives privacy interests under Exemption 6 because those interests belong to the individuals, not to the agency"); *see also Billington v. Dep't of Just.*, 69 F. Supp. 2d 128, 137 (D.D.C. 1999) ("The disclosure of unredacted records due to an administrative error does nothing to diminish the magnitude of the privacy interests of the individuals named in such reports."). None of the individuals—the investigative subjects, third parties mentioned in the records, or law enforcement agents and staff—have waived their privacy interests, and those interests survive the inadvertent disclosure.

Should the Court agree with ATF and the FBI that the information in the thirteenth production that was intended to be redacted, and was subsequently redacted, is properly exempt under FOIA and that inadvertent disclosure did not waive the rights of ATF and the FBI to claim the relevant exemptions or the significant privacy interests of third parties, then the appropriate action would be to leave the existing protective order in place.

This Court has already recognized that a protective order is an appropriate mechanism "to prevent the dissemination of information that has been inadvertently disclosed by the government in a FOIA proceeding, particularly if the information is arguably covered by a FOIA exemption." ECF No. 30 at 2. Although the previous briefing focused on the temporary nature of the relief being sought—a protective order as a bridge between the time of the inadvertent disclosure and a

ruling on summary judgment—the rationale for a protective order becomes stronger, not weaker, upon a judicial finding that the intended to be redacted material is in fact exempt and not just "arguably" exempt.[1]  Thus, courts have issued protective orders when granting agency summary judgment motions.  In *Human Rights Defense Center v. U.S. Park Police*, Civ. A. No. 19-1502 (TSC), 2023 WL 5561602, at *6 (D.D.C. Aug. 29, 2023), a judge in this District granted summary judgment, ruling that certain individuals' names were protected by Exemption 6.  The Court also ordered the plaintiff "not to disclose, disseminate, or make use of" names "covered by Exemption 6."  *Id*.  Another court in *ACLU v. Department of Defense*, Civ. A. No. 09-8071, 2012 U.S. Dist. LEXIS 194264, at *14-15 (S.D.N.Y. Mar. 20, 2012), "direct[ed] Plaintiffs to return all copies" of the inadvertently produced document after granting the Government's motion for summary judgment and finding the document was properly exempt under FOIA Exemption 1.

The foregoing examples are logical and appropriate manifestations of the fact that courts may draw on their "equitable power" to "enforc[e] [FOIA's] terms."  *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).  Among those terms are Congress's carefully chosen exemptions from disclosure, some of which allow no discretion for disclosure.  *See* 5 U.S.C. § 552(b).  Not maintaining the protective order would provide Plaintiffs with a loophole through which they control the further disclosure and use of this non-public information, thereby directly undermining the effectiveness of the Court's summary judgment ruling and its ability to "enforce[e] [FOIA's] terms."

Finally, Plaintiffs invoked this Court's jurisdiction to "compel compliance" with the FOIA, Compl. at 1, and they "may not now claim the Court lacks the authority to supervise the very process that they themselves set in motion."  *ACLU*, 2012 U.S. Dist. LEXIS 194264, at *15.

---

[1]  ATF incorporates its briefing in favor of a protective order.  *See* ECF Nos. 20, 29.

## CONCLUSION

For the foregoing reasons, ATF respectfully requests that its motion for summary judgment be granted and that the Court further order that Plaintiffs and their counsel (1) shall sequester the September 6, 2023, inadvertently produced FOIA records and the contents of those records, and (2) shall not disseminate, disclose, or use for any purpose those records or the contents of those records.

Dated: December 8, 2023    Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

 /s/ Sean Tepe
SEAN M. TEPE, D.C. Bar #1001323
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
202-252-2533

*Attorneys for the United States of America*