UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUNS OWNERS OF AMERICA, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, <br><br> Defendant. | Civil Action No. 21-cv-2919 (ABJ) |

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

1.        I am the Section Chief of the Record/Information Dissemination Section (RIDS),

Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester,

Virginia. I joined the FBI in September 2011, and prior to my current position, I was the

Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation

Support Unit, from November 2012 to June 2016; and an Assistant General Counsel, FBI Office

of the General Counsel, Freedom of Information Act (FOIA) Litigation Unit, from September

2011 to November 2012. In those capacities, I had management oversight or agency counsel

responsibility for FBI FOIA and Privacy Act (FOIPA) litigation cases nationwide. Prior to

joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration (DEA),

from September 2006 to September 2011, where among myriad legal responsibilities, I advised

on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits

nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various

1

assignments from 1994 to September 2006 culminating in my assignment as Chief, General

Litigation Branch, U.S. Army Litigation Division, where I oversaw FOIPA litigation for the U.S.

Army. I am an attorney licensed in the State of Ohio and the District of Columbia.

2.    In my official capacity as Section Chief of RIDS, I supervise approximately 241

FBI employees, supported by approximately 104 contractors, who staff a total of nine (9) Federal

Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center

units whose collective mission is to effectively plan, develop, direct, and manage responses to

requests for access to FBI records and information pursuant to the FOIA as amended by the

OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act

of 2016; the Privacy Act of 1974; Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009);

Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and

Presidential and Congressional directives. The statements contained in this declaration are based

on my personal knowledge, information provided to me in my official capacity, and conclusions

and determinations reached and made in accordance therewith.

3.    Because of the nature of my official duties, I am familiar with the procedures

followed by the FBI in responding to requests for information pursuant to the provisions of the

FOIA, 5 U.S.C. § 552, including the procedures followed by the FBI in response to consultation

requests from other government agencies regarding FOIA requests. Specifically, I am aware of

the FBI's handling of thirteen FOIA consultations sent to the FBI by the Bureau of Alcohol,

Tobacco, Firearms, and Explosives (ATF) between May 11, 2022, and July 13, 2023, in response

to a FOIA request from Plaintiffs concerning the National Instant Criminal Background Check

System (NICS) Audit Log.[1]

4.      In response to the consultation from the ATF at issue in the Court's November 16

Minute Order, the FBI reviewed a total of 115 pages of responsive records subject to the FOIA.[2]

Of the 115 pages, the FBI requested the ATF withhold portions of information on 74 pages

pursuant to subsections (b)(6), (b)(7)(C), and (b)(7)(E) of Title 5, U.S.C. § 552.

5.      The FBI submits this declaration in support of Defendant's Motion for Summary

Judgment. Part I of this declaration provides the Court with a summary of the administrative

history of the FBI's response to consultation requests received from the ATF concerning

Plaintiffs' request; Part II, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973),

explains the FBI's justification for withholding information in part pursuant to FOIA Exemptions

6, 7(C), and 7(E), 5 U.S.C. § 552 (b)(6), (b)(7)(C), and (b)(7)(E).

## PART I:  ADMINISTRATIVE HISTORY OF PLAINTIFFS' REQUEST

### THE ATF'S CONSULTATIONS TO THE FBI

6.      By email on or about May 11, 2022, the ATF sent the FBI a consultation request

concerning FBI information that was located by the ATF in response to Plaintiffs' FOIA request.

Between May 11, 2022, and July 13, 2023, the ATF sent the FBI a total of thirteen consultations

---

[1] The NICS Audit Log is a chronological record of system activities that enables the
reconstruction and examination of a sequence of events and/or changes in an event related to the
NICS operation.

[2] This declaration only addresses the 115 pages at issue in the ATF's thirteenth interim release
that was initially inadvertently provided to Plaintiffs in a non-finalized version. In total, the FBI
reviewed approximately 1,304 pages consulted by the ATF over the course of its handling of
Plaintiffs' request, but the Court's November 16 Minute Order did not require Defendant to
address any other reviewed pages at this time.

for review and response to the ATF. The records at issue in the Court's November 16 Minute

Order were consulted to the FBI via email on or about July 13, 2023.

7.     The FBI reviewed the consulted 115 pages of the thirteenth and final consultation

and responded to the ATF via email on or about August 31, 2023. The FBI requested that the

ATF withhold portions of information pursuant to exemptions (b)(6), (b)(7)(C), and (b)(7)(E) on

74 of the 115 pages. The FBI advised the ATF that the remainder of FBI information within

those 115 pages may be disclosed. The FBI provided the ATF with a copy of the consulted

records with the withholdings requested by the FBI marked with the appropriate exemptions and

FBI attribution. It was then the ATF's responsibility to apply those requested FBI withholdings

to the final version of the reviewed records before release to Plaintiffs. Additionally, the FBI

advised the ATF that since the documents would be released by the ATF, Plaintiffs should

appeal to the ATF's appellate authority and that the ATF's appellate authority will coordinate

with the Department of Justice (DOJ) Office of Information Policy (OIP) regarding the FBI's

deletions once an appeal is received. The FBI also advised the ATF that Plaintiffs could seek

dispute resolution services by contacting the Office of Government Information Services (OGIS)

or could contact the FBI's FOIA Public Liaison.

**PART II:**
**JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA**

8.     The FBI processed all records sent by the ATF for consultation to achieve

maximum disclosure consistent with the access provisions of the FOIA. Every effort was made

to provide Plaintiffs with all information in the public domain and with all reasonably

segregable, non-exempt information. The FBI did not withhold any reasonably segregable,

nonexempt portions from Plaintiffs. Further description of the information withheld, beyond

what is provided in this declaration, could identify the actual exempt information.

4

EXEMPTION 7 THRESHOLD

9.      Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it

must first demonstrate that the records or information at issue were compiled for law

enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as

implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM)

and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with

authority and responsibility to investigate all violations of federal law not exclusively assigned to

another agency, to conduct investigations and activities to protect the United States and its

people from terrorism and threats to national security, and further the foreign intelligence

objectives of the United States. Under this investigative authority, the responsive records herein

were compiled for the following specific law enforcement purpose:

10.     The pertinent records were compiled and/or created in furtherance of FBI's law

enforcement, national security, and intelligence missions. To accomplish these missions, inherent

tasks and operational functions are required, to include the development, implementation, and

operation of law enforcement programs or systems used as law enforcement and/or intelligence

gathering methods, tools, techniques, and/or procedures. Specifically, the records concern the

implementation of requests for the NICS Audit Log review for ATF investigations. NICS is a

national system established pursuant to the Brady Handgun Violence Prevention Act of 1993

(Brady Act) which provides a means of checking available information to make an immediate

determination as to whether a person is disqualified from possessing or receiving a firearm or

permit by federal or state law. The NICS Audit Log is a chronological record of system activities

that enables the reconstruction and examination of a sequence of events and/or changes in an

event related to the NICS operation. Every background check processed by the NICS is captured

in the Audit Log. Consequently, the Audit Log contains information on any individual who has applied for the transfer of a firearm, explosive, or a related permit or license, or has otherwise had his or her name forwarded to the NICS as part of a request for a NICS background check as authorized by 28 C.F.R. § 25 or other federal law. The ATF is authorized to obtain information from the NICS for civil or criminal law enforcement activities related to the Gun Control Act (GCA) or the National Firearms Act (NFA). By written request, the ATF must provide detailed information concerning their investigation and describe the suspected violations of the GCA or NFA. Suspects are monitored when they misuse the NICS system – generally by providing false information on the ATF From 4473 and/or attempting to straw purchase. FBI personnel will monitor the NICS system to determine whether the identified suspect attempts to purchase a firearm or explosives and notify ATF.

EXEMPTIONS (B)(6) AND (B)(7)(C)

CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY AND

UNWARRANTED INVASION OF PERSONAL PRIVACY

11.    FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6.

12.    FOIA Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[3]

13.    When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information about an individual, their name, or their identifying information[4] would shed light on the FBI's performance of its mission to protect the American people and uphold the Constitution of the United States, and its function to: protect the United States from terrorist attack; protect the United States against foreign intelligence, espionage, and nefarious cyber operations; combat significant criminal cyber activity, public corruption, transnational criminal enterprises, white-collar crime, and violent crime; and protect civil rights.. In each instance wherein information

---

[3] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

[4] Hereafter, identifying information includes the following: telephone numbers, email addresses, and FBI numbers (singular, internal numbers assigned to investigative suspects).

was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals'

privacy interests outweighed any public interest in disclosure. Specifically, the FBI asserted

Exemptions 6 and 7(C) to protect the following categories of information:

14.    Names and Identifying Information of FBI Special Agents and Professional Staff.

Pursuant to Exemptions (b)(6) and (b)(7)(C), the FBI withheld the names and identifying

information of FBI Special Agents (SAs) and professional staff.[5] These FBI SAs and

professional staff were responsible for conducting, supervising, and/or maintaining the

investigative and/or administrative activities related to the NICS Audit Log reflected in the

documents sent for consultation by the ATF. These responsibilities included but are not limited

to the following: coordinating/completing tasks in support of the FBI's investigative and

administrative functions, and/or compiling information.

15.    Assignments of SAs to any particular investigation are not by choice. Publicity,

adverse or otherwise, arising from a use of specific FBI investigative techniques, may seriously

prejudice their effectiveness in conducting other investigations or performing their day-to-day

work. The privacy consideration is also applied to protect FBI SAs, as individuals, from

unnecessary, unofficial questioning as to the conduct of this or other investigations/investigative

activities, whether or not they are currently employed by the FBI. FBI SAs conduct official

inquiries into various criminal and national security violation cases. The publicity associated

with the release of an SA's identity in connection with particular investigative activities could

trigger hostility toward a particular SA. During the course of an investigation, an SA may engage

---

[5] This information was withheld on pages 1, 4, 7, 13, 17-19, 22-23, 25, 29, 32-33, 35, 38, 41, 43, 46, 50, 54, 57-58, 60, 63, 65-67, 70, 72, 76, 79, 84, 87-88, 90, 92, 94, 96-97, 100, 103-105, and 115 of the 115-page consultation.

with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. Persons targeted by such investigations/investigative activities, and/or those sympathetic to those targeted, could seek to inflict violence on an SA based on their participation in the deployment of certain investigative techniques. This is because an individual targeted by such law enforcement actions may carry a grudge against those involved with the investigation, which may last for years. These individuals may seek revenge on SAs and other federal employees involved in a particular investigative activities. There is no public interest served by disclosing the SAs' identities because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy; and the FBI properly withheld the names and identifying information of FBI SAs pursuant to Exemptions 6 and 7(C).

16.    The FBI also withheld the names and identifying information of FBI professional staff pursuant to Exemptions 6 and 7(C). These FBI professional staff were assigned to handle tasks related to handling of requests by the ATF for NICS monitoring. Similar to FBI SAs, these FBI employees could be targeted for reprisal based on their involvement in specific investigations/investigative activities. Furthermore, these FBI professional staff were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. Thus, these individuals maintain substantial privacy interests in not having their identities disclosed. In contrast, the FBI concluded that no public interest would be served by disclosing the identities of these FBI professional staff to the general public because their identities would not, themselves, significantly increase the public's

understanding of the FBI's operations and activities. Accordingly, after balancing these profession staff employees' substantial privacy interests against the non-existent public interest, the FBI determined disclosure of their identities would constitute a clearly unwarranted invasion of their personal privacy. Therefore, the FBI properly withheld the names and identifying information of FBI professional staff pursuant to Exemptions 6 and 7(C).

17.     Identifying Information of Third Parties of Investigative Interest. Pursuant to Exemption (b)(6) and (b)(7)(C), the FBI withheld the identifying information of third parties who were of investigative interest to the FBI and/or the ATF.[6] Considering the FBI is an investigative and intelligence agency, disclosure of these third parties' identifying information in connection with FBI records carries an extremely negative connotation. Specifically, the FBI withheld the "FBI Number" field on ATF forms titled "ATF Investigations Information Form for Monitoring Firearms Purchasers in the NICS." An FBI number, also known as a Universal Control Number, is a unique identifying number assigned by the FBI to a particular identity of someone under investigation by the FBI.

18.     The FBI has determined that acknowledging whether or not an individual was assigned an FBI number on the forms submitted to the FBI by the ATF would trigger harm under FOIA Exemptions (b)(6) and (b)(7)(C). As such, the FBI requested the ATF withhold the "FBI Number" field on each ATF form pursuant to Exemptions 6 and 7(C) regardless of whether the individual was actually assigned an FBI number or not. To only withhold the field when an FBI number was assigned would effectively identify which individuals were the subjects of FBI

_____

[6] This information was withheld on pages 2, 5, 12, 15, 19, 21, 24, 29, 31, 35, 37, 40, 42, 45, 48, 52, 56, 59, 62, 65, 68, 72, 74, 78, 81-82, 86, 89, 91, 93, 95, 98, 102, 105, and 107 of the 115-page consultation.

investigations. Given that the ATF in some instances disclosed case numbers and limited biographical information about the individuals in the records at issue, it is possible that these individuals could be identified and associated with an FBI investigation by the presence or absence of the FBI's redactions in the FBI Number field. Additionally, if an FBI number is present in the field, that number would be uniquely identifying to a third party of investigative interest. Thus, the FBI withheld the field on this form regardless of the presence or absence of an FBI number.

19.    Being identified as a subject of FBI investigative interests carries a strong negative connotation and a stigma, whether or not these individuals ever committed criminal acts. Release of the identifying information of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention. Furthermore, it could result in professional and social repercussions, due to resulting negative stigmas. It is well-recognized that individuals have substantial privacy interests in relation to being associated with law enforcement investigations because any such association can engender comment, speculation, or harassment; can be embarrassing and stigmatizing; and can, in some circumstances, result in physical harm or threats of harm or death. Statements by an individual alluding to or acknowledging an association with a law enforcement investigation do not extinguish the privacy interests of the third party or constitute a waiver of the third party's privacy interests. Official confirmation could reasonably be expected to draw negative and unwanted attention to this individual; could subject them to harassing inquiries, and otherwise stigmatize and adversely affect them.

20.    Accordingly, the FBI determined these individuals maintain substantial privacy interests in not having their identifying information disclosed. In contrast, disclosing personal

11

information about these individuals, including the presence or absence of an FBI number and/or

the FBI number itself, would not significantly increase the public's understanding of the FBI's

performance of its mission and so the FBI concluded that there was no public interest here

sufficient to override these individuals' substantial privacy interests. For these reasons, the FBI

properly withheld this information pursuant to Exemptions 6 and 7(C).

EXEMPTION (B)(7)(E) INVESTIGATIVE TECHNIQUES AND PROCEDURES

21.     FOIA Exemption 7(E) provides protection for:

> law enforcement records [which]…would disclose techniques and
> procedures for law enforcement investigations or prosecutions, or would
> disclose guidelines for law enforcement investigations or prosecutions if
> such disclosure could reasonably be expected to risk circumvention of the
> law.

5 U.S.C. § 552(b)(7)(E).

22.     Exemption (b)(7)(E) has been asserted to protect information from these records,

the release of which would disclose techniques and/or procedures for law enforcement

investigations or prosecutions or would disclose guidelines for law enforcement investigations or

prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

23.     Within the responsive documents, the FBI applied Exemption (b)(7)(E) to non-

public investigative techniques and procedures utilized by the FBI to pursue its law enforcement

mission, and also to non-public details about techniques and procedures that are otherwise

known to the public. Specifically, the FBI asserted Exemption 7(E) to withhold the following

category of information:

24.     FBI Secure Internal E-mail Addresses and Telephone Numbers: Pursuant to

Exemption (b)(7)(E), the FBI withheld internal e-mail addresses and non-public telephone

12

numbers of FBI personnel.[7] Releasing this information would provide criminals with specific

targets for attacks on FBI communications through "spoofing" or other illegal means.[8] For

example, "spoofing" occurs when a criminal disguises a communication from an unknown

source to appear as if the communication is coming from a known, trusted source. Spoofing

occurs with emails, telephone calls, and websites. Criminals often use social engineering

techniques to elicit sensitive information from the unsuspecting victim. This can be especially

dangerous when criminals spoof numbers of law enforcement agencies so as to appear as if they

are from official law enforcement agencies.  Victims of such crimes often feel a higher

responsibility to respond to questioning and have an expectation that the information they

provide will only be used for official law enforcement purposes. Considering the current cyber-

security environment where government data breaches and other hacking attempts on

government systems are prevalent, it is likely that the release of this type of information could

provide hackers with avenues to exploit the FBI's Information Technology system. It is possible

they could use this information to gain unauthorized access to FBI systems, view and/or

manipulate sensitive investigative data, interfere with the FBI's non-public intranet protocol,

and/or hinder the FBI's ability to enforce the law by disrupting the FBI's internal

---

[7] This information was withheld on pages 1, 4, 7, 13, 17-19, 22-23, 25, 29, 32-33, 35, 38, 41, 43, 46, 50, 54, 57-58, 60, 63, 65-67, 70, 72, 76, 79, 84, 87-88, 90, 92, 94, 96-97, 100, 103-105, and 115 of the 115-page consultation.

[8] As recently as June 3, 2021, DOJ's Executive Office for Immigration Review (EOIR) announced it was notified of phone calls that spoofed the Office of the Chief Immigration Judge as part of a misinformation campaign.  Callers spoofed the Office of the Chief Immigration Judge's main line so that calls would appear to be coming from EOIR on the recipient's caller ID.  The caller then posed as an EOIR employee and sought personal information from the victims. *See*: https://www.justice.gov/eoir/pr/eoir-warns-scammers-spoofing-agency-phone-number, last accessed Feb. 4, 2022.

13

communications and by devaluing public trust. Releasing this information poses substantial risks to FBI information systems, could potentially decrease the FBI's effectiveness, and could enable criminals to circumvent the law. Accordingly, the FBI asserted Exemption 7(E) to withhold this information.

## FORESEEABLE HARM STANDARD

25.    The FOIA Improvement Act of 2016 generally adopted the foreseeable harm standard and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. Accordingly, the FBI's analysis of records responsive under the FOIA is a two-part process. First, the FBI determines whether a portion of a record is exempt pursuant to one or more FOIA exemptions. Second, if a portion is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the portion. In each of the portions of withheld records, the FBI conducted this two-part analysis and only withheld portions where it determined the withheld portion met both of these criteria. The foreseeable harm is more fully described under each exemption justification.

## SEGREGABILITY

26.    As discussed in ¶¶ 3-4 supra, the ATF consulted a total of 115 responsive pages to the FBI for its review. After conducting a line-by-line review of these pages, the FBI recommended that the ATF withhold potions of information on 74 pages and did not request the ATF withhold any information on 41 pages which contained no exempt FBI information.  Each of these categories is discussed below to further address segregability.

14

a. <u>RIF FBI Information</u>. Following its segregability review, RIDS determined 41 pages contained no exempt FBI information as there was no foreseeable harm to an interest protected by a FOIA exemption.

b. <u>RIP FBI Information</u>. Following its segregability review, RIDS determined 74 pages could be released in part with redactions per the identified FOIA exemptions herein. These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.

## CONCLUSION

27.     The FBI processed 115 pages consulted by the ATF and released all reasonably segregable non-exempt information from documents responsive to Plaintiffs' FOIA request that are subject to FOIA. The FBI processed the records under the access provisions of the FOIA to achieve maximum disclosure. Information was properly withheld pursuant to FOIA Exemptions 6, 7(C), and 7(E). The FBI carefully examined the documents and determined the information withheld from Plaintiffs in this case, if disclosed would cause a clearly unwarranted invasion of the personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; and/or would disclose techniques and procedures for law enforcement investigations. After extensive review of the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this _____6th_____ day of December 2023.


MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia