UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUN OWNERS OF AMERICA, INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,<br><br>Defendant. | Civil Action No. 21-2919 (ABJ) |

**REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), supported by consulting agency Federal Bureau of Investigation ("FBI"), files this reply in further support of its Motion for Summary Judgment ("Mot."; ECF No. 32).

As reflected in Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Pls. Resp."; ECF No. 33), Plaintiffs do not challenge either the facts of a September 6, 2023, inadvertent production of a single PDF file with "FOIA redactions that were indicated" but not permanently applied or the legal basis for the FOIA exemptions claimed by ATF in those redactions (which had been permanently applied in a separate file that was mistakenly not produced until September 8, 2023). Because there is no genuine dispute that the redacted information is properly exempt from disclosure, the Court should maintain the existing protective order requiring that Plaintiffs and their counsel sequester the inadvertently produced FOIA records and not disseminate, disclose, or use the contents of those records. *See* Order, ECF No. 30.

A protective order that keeps Plaintiffs from treating the inadvertent production as a loophole—through which it could ignore the Court's judgment as to what is and is not publicly

disclosable under FOIA—is authorized by the Court's inherent authority to enforce its orders and its equitable powers to enforce the FOIA statute's terms.

**ARGUMENT**

**I.  PLAINTIFFS CONCEDE THAT ATF MADE APPROPORIATE EXEMPTION CLAIMS**

Plaintiffs implicitly or explicitly concede that ATF and the FBI made appropriate exemption claims in ATF's production number 13.  Specifically:

- "Plaintiffs generally do not contest" any fact set forth in ATF's Statement of Material Facts as to Which There Is No Genuine Dispute ("Def. Fact Stmt."; ECF No. 32-1).  *See* ECF No. 33-1.

- Plaintiffs do not challenge any exemption claim or specific redactions in production number 13.  *See generally* Pls. Resp.

- Plaintiffs also concede that ATF and the FBI have not waived their FOIA exemption claims by virtue of the inadvertent disclosure.  *See* Pls. Resp. at 6 n.7.

Accordingly, the Court may treat the FOIA exemption arguments in ATF's Motion as conceded.[1] *See, e.g., Brett v. Brennan*, 404 F. Supp. 3d 52, 59 (D.D.C. 2019) ("[I]t is well-understood that 'if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.'") (quoting *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014)).

Plaintiffs' only dispute is with being subject to a protective order that would require Plaintiffs to treat information that they concede is FOIA exempt as exempt from disclosure.  To

---

[1]  Plaintiffs' decision to "not challenge" the redactions of ATF and the FBI under various FOIA exemptions does not make the Court's forthcoming summary judgment ruling "something of an advisory opinion" as suggested by Plaintiffs in a footnote.  Pls. Resp. at 5 n.4.  Rather, it is a concession on issues that support the foundation of the continuation of the protective order.

make this argument, Plaintiffs begin by offering counterfactual assertions about the otherwise undisputed events. For example, Plaintiffs repeatedly argue that ATF "did not apply" redactions to production number 13 and suggest that ATF is seeking a protective order to protect material where "a FOIA exemption could have been applied" but was not. *See, e.g.,* Pls. Resp. at 7, 9, 11. But that is not this case. Plaintiffs have conceded that ATF did make redactions in production number 13 but had simply sent Plaintiffs' counsel the wrong PDF file initially. *See* Second Declaration of Ginae Barnett ("2d Barnett Decl.") ¶¶ 7-9; Def. Fact Stmt. ¶¶ 5-6, 9; Pls. Resp. at 3 (the initial "ATF production contained FOIA redactions that were indicated" but not applied).

Plaintiffs also argue that the Court should not issue the requested injunction "reflexively, merely because the government asks." Pls. Resp. at 11. ATF agrees with that proposition, but again, that is not this case. ATF has provided the Court with the undisputed factual grounds to find that there was an inadvertent production of a 115-page file with hundreds of FOIA redactions indicated in red boxes and overlay text but not yet permanently applied and that those redactions cover FOIA exempt material. None of the cases cited by Plaintiffs, which have already been briefed by the parties when the Court considered ATF's initial protective order motion, support denying the requested protective order under the facts of this case. Nonetheless, ATF briefly explains why the cases cited by Plaintiffs in their Response fail to support a denial of the protective order.

Plaintiffs cite *100Reporters v. Department of State*, 602 F. Supp. 3d 41 (D.D.C. 2022), wherein Judge Moss expressed his skepticism regarding a "single sentence on the final page of a reply brief" on behalf of the State Department asking that the Court "direct Plaintiffs to return or destroy" two spreadsheets that had been previously produced with information that "should have been redacted under FOIA Exemption [7(F)]." *Id*. at 83. The court denied the request without

prejudice, which was not renewed by the State Department. ATF respectfully submits that it has provided this Court the factual and legal basis that Judge Moss believed was lacking in *100Reporters*.

Plaintiffs also argue that "as another judge of this Court recently explained, a finding that certain information *could have qualified* for an exemption 'does not end the matter.'" Pls. Resp. at 10 (citing *Cowan v. FCC*, Civ. A. No. 21-895 (RMM), 2022 U.S. Dist. LEXIS 166363 (D.D.C. Sept. 15, 2022)). The cited passage in *Cowan* was making the uncontroversial point that "[s]atisfying the statutory criteria for Exemption 4 'does not end the matter'" because the FOIA Improvement Act of 2016 imposes an additional reasonably foreseeable harm requirement. *Id*. at *31. *Cowan* does not otherwise aid Plaintiffs because the Court granted a protective order while the parties further briefed the question of foreseeable harm. *Id*. at *47.

Plaintiffs further argue that there are "factors" or "considerations" that courts weigh in deciding whether to issue a protective order. Pls. Resp. at 11. But what Plaintiffs identify are factors that they believe this Court should use as hurdles to a continued protective order, not factors that courts have required to obtain a protective order. For example, Plaintiffs assert that a party is not entitled to a protective order unless the inadvertently produced material serves "no discernable public interest" and there is a reasonably foreseeable harm to an interest that a FOIA exemption seeks to protect. *Id*. As reflected in *Cowan*, the existence of reasonably foreseeable harm is not a factor specific to issuing a protective order but rather a part of the normal FOIA exemption analysis. And the "no discernable public interest" language comes from *Human Rights Defense Center v. U.S. Park Police*, Civ. A. No. 19-1502 (TSC), 2023 WL 5561602 (D.D.C. Aug. 29, 2023), in which the court was simply summarizing its decision on Exemption 6. *Id*. at *6 ("As discussed previously, the claimants' names are covered by Exemption 6, and there is no discernible

public interest in having the names of private citizens disclosed."). The court added in its summary that because the material was exempt, a protective order would issue. *Id*. ("Accordingly, the court will use its implied powers, as set forth in [*Wilson v. FCC*, Civ. A. No. 21-895 (RMM), 2022 WL 4245485, at *5 (D.D.C. Sept. 15, 2022)], to order [plaintiff] not to disclose, disseminate, or make use of the claimants' names."). That court was not requiring a finding of "no discernable public interest" to be a protective order-specific gating item; rather, it issued a protective order after ruling that the inadvertently produced information was exempt from disclosure. This Court should do the same.

Plaintiffs also suggest that courts "examine whether the agency discovered its own error or instead was notified by the requester." Pls. Resp. at 11. In support, Plaintiffs cite multiple cases, but in none of them did the court consider the identity of the discovering entity to be a factor in whether to issue a protective order. For example, Plaintiffs cite *ACLU v. Department of Defense*, Civ. A. No. 09-8071, 2012 U.S. Dist. LEXIS 194264, at *4 (S.D.N.Y. Mar. 20, 2012), which noted that plaintiffs had discovered the inadvertent disclosure and alerted the Defense Department. But that was not a factor in its analysis for a protective order. *See id*. at *14-15. The same is true in *Cowan*, another case cited by Plaintiffs. The FCC was not the first entity to discover the inadvertent disclosure, but that was not a factor in the protective order evaluation. *Cowan*, 2022 U.S. Dist. LEXIS 166363, at *43-48.

Plaintiffs further argue that the agency's negligence is a consideration, citing a case that was not assessing whether to issue a protective order consistent with its FOIA exemption ruling.

Pls. Resp. at 11.² In any event, ATF has demonstrated its diligence in immediately seeking to mitigate the inadvertent disclosure. *See* 2d Barnett Decl. ¶¶ 8-12.

Given that (i) there is no dispute that ATF inadvertently produced the wrong PDF file containing indicated but not permanently applied redactions, (ii) those redactions, which were made in an immediately produced replacement production number 13, are covered by relevant FOIA exemptions, and (iii) courts have used their inherent power to issue protective orders protecting inadvertently produced exempt material, ATF submits that the existing protective order should continue.

## II. PLAINTIFFS' "PUBLIC INTEREST" AND "FORESEEABLE HARM" ARGUMENTS ARE UNAVAILING

### A. A Purported Public Interest in NICS Monitoring Is Not a Basis for Disclosing the Redacted Information

Plaintiffs spill much ink arguing that there is "significant public interest" in information relating to NICS monitoring, Pls. Resp. at 15, but that argument does not get Plaintiffs very far when ATF has disclosed the NICS monitoring request records sought in Plaintiffs' FOIA. *See* 2d Barnett Decl., Attachment I. The appropriate question is whether there is a public interest in the information withheld by ATF's and the FBI's redactions, assuming the "public interest" is even a consideration in the exemption analysis. Plaintiffs acknowledge this, but then disclaim any ability to address the relevant question because the existing protective order supposedly "forbid[s them] from discussing the 'specific' public interest in the redacted portions[.]" Pls. Resp. at 15-16. The protective order does no such thing. It merely places Plaintiffs in the same position with respect

---

² Plaintiffs cite *Memphis Publishing Co. v. FBI*, 189 F. Supp. 3d 28 (D.D.C. 2012), a case that is factually distinct in that the agency's claim of inadvertent production was belied by the agency's "decision not to seek the return of the material, the decision to affix the material to a summary judgment motion filed on the public docket and then a second pleading filed on the public docket[.]" *Id.* at 31.

to production number 13 as they are with respect to the other 12 productions. In other words, Plaintiffs must make their public interest argument in light of the redacted production number 13 (*see* 2d Barnett Decl., Attachment I) and the Government's proffer through the ATF and FBI declarations (which are not subject to challenge). The redacted production and declarations leave no doubt that the withheld information consists of personally identifying information of law enforcement, investigative subjects, other third parties; law enforcement techniques and sources; and investigative information from the Firearms Tracing System database. Nothing prevents Plaintiffs from arguing that there is public interest in the disclosure of the redacted information, and in fact, Plaintiffs deny interest in most of this information. *See* Pls. Resp. at 23.

Simply put, Plaintiffs' belief that ATF and the FBI have been "abusing" NICS is not a basis for the disclosure of otherwise FOIA exempt information, as is confirmed by Plaintiffs' failure to cite case law to the contrary. Plaintiffs' Response contains an entire section arguing that NICS monitoring using the NICS Audit Log is unlawful for a variety of reasons. *See* Pls. Resp. at 16-21. Plaintiffs are free to take that position and, as appropriate, advocate for that position in other forums and litigation. It is not, of course, directly relevant to any analysis of ATF's specific withholdings in production number 13 or the requested protective order, as is demonstrated by Plaintiffs' failure to rely on any particular redactions in making this argument. Because this section of the Response is not relevant or responsive to ATF's Motion, ATF reserves any arguments on the lawfulness of NICS monitoring.

**B.      Plaintiffs Have Not Rebutted ATF and FBI's Foreseeable Harm Proffers**

Plaintiffs next argue that, even if the redacted information is appropriately covered by ATF's claimed exemptions, Defendants have failed to demonstrate foreseeable harm that would result from allowing Plaintiffs to use and disclose the contents of the inadvertent production. *See* Resp. at 21-27. This argument fails when one reviews each of the exemptions at issue.

First, ATF relied on Exemption 3 to withhold information from ATF's Firearms Tracing System database, *see* Mot. at 4-5; 2d Barnett Decl. ¶¶ 6-8, and Plaintiffs do not dispute that such information is exempt. Plaintiffs also do not dispute (*see generally* Pls. Resp.) that, as a matter of law, a lack of foreseeable harm is not a basis for "disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3)." Mot. at 14 (citing 5 U.S.C. § 552(a)(8)(B) and *Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*, Civ. A. No. 18-2622 (ABJ), 2021 WL 4502106, at *22 (D.D.C. Sept. 30, 2021)). Whether there would be foreseeable harm from disclosure of the redacted Firearms Tracing System database information or not, Congress directed that such information is not to be disclosed.[3]

Second, ATF relied on Exemptions 6, 7(C), and 7(D) to protect multiple types of personally identifiable information (*e.g.*, names, social security numbers, birth dates, telephone and email addresses) of multiple of categories of individuals (*e.g.*, third parties of investigative interest, other third parties mentioned, law enforcement personnel, and confidential sources). *See* Mot. at 6-12; 2d Barnett Decl. ¶¶ 23-29; Declaration of Michael Seidel (ECF No. 32-4) ¶¶ 11-20. Again, Plaintiffs have not challenged the claimed exemptions of such information. And, with one exception, Plaintiffs do not dispute ATF's finding that foreseeable harm would occasion disclosure of the redacted personally identifiable information. *See* Pls. Resp. at 23, 25.

With respect to the investigative subjects identified in the redacted records, Plaintiffs do not dispute that courts have concluded that "[t]here can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject

---

[3] Nevertheless, ATF did articulate foreseeable harm that would result from disclosure of trace system information. *See* 2d Barnett Decl. ¶¶ 20-22.

of a law enforcement investigation." *People for the Ethical Treatment of Animals ("PETA") v. Nat'l Insts. of Health*, 745 F.3d 535, 542 (D.C. Cir. 2014) (cleaned up). Rather, Plaintiffs argue that ATF "overlooks . . . the possibility of disclosing this information *to the persons* who were the subjects of ATF/FBI investigations." Pls. Resp. at 25 (emphasis in original). This is not a relevant consideration because the investigative subjects are not the FOIA requesters here. Nor is Plaintiffs' belief that NICS monitoring is unlawful a sufficiently relevant consideration to override the investigative subject's substantial privacy interests. *See Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 780 (1989) ("privacy interest protected by Exemption 7(C) is . . . at its apex while the FOIA-based public interest in disclosure is at its nadir" when requester seeks another private citizen's criminal history).

Third, ATF relied on Exemption 7(E) to protect certain law enforcement techniques and sources (*e.g.*, databases) that were used to obtain information in support of the various ATF investigations, which were shared with the FBI to support its NICS monitoring request. *See* Mot. at 12-13; 2d Barnett Decl. ¶¶ 30-31. Plaintiffs have not challenged those claimed exemptions, and because the foreseeable harm analysis overlaps with the "risk of circumvention" analysis for the exemption, Plaintiffs' concession of the exemption effectively concedes the existence of foreseeable harm. *See* Mot. at 15. Further, Plaintiffs never address the actual information claimed as exempt pursuant to Exemption 7(E), which is present on only four pages of the 115-page file at issue. *See* Pls. Resp. at 26; 2d Barnett Decl. ¶ 31 n.4.

In sum, Plaintiffs offer no real rebuttal to ATF and the FBI's conclusion that, where legally required under FOIA, there are foreseeable harms associated with disclosing the indisputably exempt information that the agencies redacted.[4]

## III. THE FIRST AMENDMENT DOES NOT PRECLUDE THE REQUESTED PROTECTIVE ORDER

Lastly, Plaintiffs attempt to wrap themselves in the First Amendment, but upon inspection, the First Amendment is an ill-fitting defense for trying to take advantage of an inadvertent production of the wrong PDF file.

Specifically, Plaintiffs contend that by seeking the continuation of the protective order the Government is requesting a "classic prior restraint" on their "press activity."  Pls. Resp. at 27. First, there has been no fact finding on the issue of whether Plaintiffs would constitute the "media," but the facts before the Court are plainly not those of a newspaper challenging a state court order limiting reporting on a public trial (*Times-Picayune Pub. Corp. v. Schulingkamp*, 419 U.S. 1301 (1974)), a newspaper resisting an effort to enjoin its publication of an independently acquired history of Vietnam war policy (*New York Times Co. v. United States*, 403 U.S. 713 (1971)), or a similar limitation on speech.  Rather, the protective order would do nothing more than seek to ensure compliance with this Court's ruling regarding what is exempt from disclosure under FOIA. Put differently, the protective order does not limit speech more than any other FOIA exemption upheld by a court.

---

[4]   And again, Plaintiffs cannot blame the Court for their own failures.  At the start of its discussion of harm from disclosure, Plaintiffs repeat their inaccurate contention that the existing protective order hamstrings their ability to make an effective argument, here claiming that "[t]his Court's orders prevent Plaintiffs from . . . countering ATF's" arguments on foreseeable harm from disclosure.  Pls. Resp. at 22.  Again, the protective order merely places Plaintiffs in the same position with respect to production number 13 as it is with respect to the other 12 productions (and the same position of other FOIA requesters questioning an agency's assertion of foreseeable harm).

One of the cases cited in Plaintiffs' Response is *Seattle Times Co. v Rhinehart*, 467 U.S. 20 (1984), wherein the Supreme Court rejected the newspaper's argument that it has "as an unrestrained right to disseminate information that has been obtained [by it] through pretrial discovery" because freedom of speech "does not comprehend the right to speak on any subject at any time." *Id*. at 31 (citations and internal quotation marks omitted). The Court ruled that "an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny" but allowed that one may "disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes." *Id*. at 34.

To differentiate *Rhinehart* from this case, Plaintiffs attempt to argue that they received the inadvertent production number 13 through means independent of judicial processes. Plaintiffs contend that they obtained inadvertent production number 13 "pursuant to Defendant's statutory obligations that exist separate and apart from this case" and that "it is ultimately FOIA, not this Court, that compels Defendants to produce certain records." Pls. Resp. at 29. This argument ignores that fact that Plaintiffs invoked this Court's jurisdiction to "compel compliance" with FOIA. Compl. at 1. It also ignores the fact that FOIA allows for and indeed mandates that certain information be exempt from disclosure. Thus, trying to portray the FOIA statute as the "means independent of court processes" through which Plaintiffs obtained inadvertent production number 13 does not aid Plaintiffs because the protective order sought by ATF is aimed at ensuring that Plaintiffs respect the exemptions provided in the FOIA statute and affirmed through the judgment of this Court in a case initiated by Plaintiffs.

Nor do Plaintiffs advance their cause by mispresenting the undisputed factual record. Plaintiffs repeatedly argue that ATF "deliberately disclosed" the records in the September 6, 2023,

production even though they have conceded the facts establishing that ATF's FOIA employee mistakenly sent the PDF file containing the to-be-applied redactions rather than the PDF file containing the permanently applied redactions. 2d Barnett Decl. ¶¶ 7-9; Def. Fact Stmt. ¶¶ 5-6, 9; Pls. Resp. at 3. Plaintiffs have also conceded that the inadvertent production was not an official disclosure that waived ATF and FBI's exemption claims. Pls. Resp. at 6 n.7. Thus, the undisputed factual record establishes that ATF made a "simple clerical mistake in FOIA processing." *See Mobley v. CIA*, 806 F.3d 568, 583-84 (D.C. Cir. 2015).

Further, a court order to mitigate ATF's clerical mistake does not constitute a prior restraint on speech. As Plaintiffs acknowledge, two courts have rejected the argument that an order protecting inadvertently produced FOIA material constitutes a prior restraint on speech. And it is not a close call as suggested by Plaintiffs' discussion of *Public Citizen Health Research. Group. v. FDA*, 953 F. Supp. 400 (D.D.C. 1996). Plaintiffs assert that the court in *Public Citizen* "agreed that serious First Amendment concerns would be raised by a court's issuance of a *permanent* protective order" and that "a permanent court order . . . might create" a prior restraint. Pls. Resp. at 30, 31. The court actually indicated the opposite by stating that "a protective order prohibiting [FOIA requester] from disseminating or using the information . . . will not infringe on any First Amendment concern." *Pub. Citizen*, 953 F. Supp. at 404. While it is true that the court considered the temporary nature of the protective order being sought, another important factor was that the initial disclosure was not "due to a conscious choice" but rather a "qualitatively different" situation "where the government *inadvertently*" disclosed information. *Id*. (emphasis in original). Additionally, the temporary protective order was a prelude to the court making a definitive determination of "whether [the information] qualifies for non-disclosure" pursuant to the asserted exemption. *Id*. In light of that and the court's statement that "[i]f the information is not subject to

disclosure under exemption four, it should not be publicly available[,]" *id*., Plaintiffs' effort to paint the court in *Public Citizen* as hostile to a permanent protective order is unavailing.

Plaintiffs argue that the other decision, *ACLU v. Department of Defense*, Civ. A. No. 09-8071, 2012 U.S. Dist. LEXIS 194264 (S.D.N.Y. Mar. 20, 2012), was "wrongly decided without any analysis" and distinguishable because "it involved *classified information*." Pls. Resp. at 31. Plaintiffs are correct that *ACLU* concerned classified information, but the court's analysis was guided more by whether plaintiffs could avoid the reach of the court's FOIA exemption determination through an inadvertent production. As that court explained:

> The production containing the Document occurred in accordance with a court-ordered stipulation and as part of a court-supervised process. Plaintiffs initiated this FOIA action so that the Court would compel the Government to respond to their FOIA requests. That compelled process has generated a situation in which Plaintiffs seek to maintain their unauthorized possession of a classified document. Plaintiffs may not now claim the Court lacks the authority to supervise the very process that they themselves set in motion.

*ACLU*, 2012 U.S. Dist. LEXIS 194264, *14-15, *10 n2 ("The fact that Plaintiffs came to possess the Document via an inadvertent disclosure and now wish to disseminate its contents is irrelevant to the determination as to whether the Document is properly classified" as subject to FOIA Exemption 1.). After noting its inherent authority to enforce its orders, the court "direct[ed] Plaintiffs to return all copies of the [inadvertently produced] Document in their possession."[5] *Id*. at *15. Thus, neither *Public Citizen* nor *ACLU* found the First Amendment to be a barrier to issuing a protective order to protect inadvertently produced FOIA exempt information.

---

[5]    The final section of Plaintiffs' Response is not a legal or factual argument but a warning that if the protective order remains in place "future requesters receiving careless or inadvertent FOIA disclosures will undoubtedly be incentivized to rush those documents into the public sphere" rather than alert the agency to the inadvertent production. Pls. Resp. at 32.

In sum, the requested protective order is not a restraint on Plaintiffs' freedom of speech but rather a mechanism to enforce this Court's judgment regarding the scope of FOIA's exemption of information contained in the 115-page PDF inadvertently produced as production number 13 on September 6, 2023.

## CONCLUSION

ATF respectfully requests that its motion for summary judgment be granted and that the Court further order that Plaintiffs and their counsel (1) sequester the September 6, 2023, inadvertently produced FOIA records and the contents of those records, and (2) not disseminate, disclose, or use for any purpose those records or the contents of those records.

Dated: January 12, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

 */s/ Sean Tepe*
SEAN M. TEPE, D.C. Bar #1001323
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
202-252-2533

*Attorneys for the United States of America*