## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————

)
GUN OWNERS OF AMERICA, INC.,       )
*et al.*,      )
           )
        Plaintiffs,     )
          )
       v.        )     Civil Action No. 21-2919 (ABJ)
         )
BUREAU OF ALCOHOL,      )
TOBACCO, FIREARMS AND    )
EXPLOSIVES,         )
         )
        Defendant.    )
———————————————————————)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Gun Owners of America, Inc. and Gun Owners Foundation brought this action against the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") to "compel compliance" with their request for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Compl. [Dkt. # 1] at 1. Over the course of litigation, ATF produced documents in response to plaintiffs' FOIA request in thirteen separate productions. *See* Joint Status Reports [Dkt. ## 8–9, 11–19]. But in its final production, the agency inadvertently produced documents to plaintiffs showing information that had been marked for redaction under FOIA's statutory exemptions, but was not actually redacted. Joint Status Report [Dkt # 19] ¶ 4. The Court issued a temporary protective order sequestering the inadvertently produced records until it could determine whether the information the agency marked for redaction fell properly within the claimed FOIA exemptions. Temporary Protective Order (Oct. 30, 2023) [Dkt. # 30] ("TPO") at 1.

Now before the Court is ATF's motion for summary judgment, Def.'s Mot. for Summ. J. [Dkt. # 32] ("Def.'s Mot."), and plaintiffs' motion to lift the temporary protective order. *See* Pls.'

Mot. to Lift Protective Order [Dkt. # 36] ("Pls.' Mot."). Both motions are fully briefed. *See* Pls.' Resp. to Def.'s Mot. [Dkt. # 33] ("Pls.' Resp."); Def.'s Reply in Supp. of Def.'s Mot. [Dkt. # 34] ("Def.'s Reply"); *see also* Def.'s Opp. to Pls.' Mot. [Dkt. # 39] ("Def.'s Opp."); Pls.' Reply to Def.'s Opp. [Dkt. # 40] ("Pls.' Reply").

For the reasons stated below, plaintiffs' motion to lift the temporary protective order is **DENIED** as moot, and defendant's motion for summary judgment is **GRANTED**.

## BACKGROUND

Plaintiffs are two non-profit organizations that conduct "activities in defense of the Second Amendment" and educate the public about the right to bear arms. Compl. ¶¶ 3–4. On April 28, 2021, they submitted a Freedom of Information Act request to the Bureau of Alcohol, Tobacco, Firearms & Explosives seeking records related to the agency's use of the National Instant Criminal Background Check System ("NICS"). *See* Ex. A to Compl. [Dkt. # 1-1] ("Ex. A"); Compl. ¶ 8. The NICS is the system used "to determine if an individual is prohibited from purchasing a firearm." Second Decl. of Ginae Barnett [Dkt. # 32-3] ("Barnett Decl.") ¶ 14. Specifically, plaintiffs requested:

> (a) records showing the number of individuals for whom ATF is requesting or has requested NICS monitoring, during the 12-month period preceding this request;
>
> (b) records demonstrating the purpose(s) for which each individual has been monitored (*i.e.*, suspected straw purchases, false statements, etc.);
>
> (c) records discussing the legality of NICS monitoring;
>
> (d) records demonstrating the number of individuals prosecuted as a result of being "monitored" by the program (criminal case docket numbers will suffice); and
>
> (e) records demonstrating any reported unlawful or otherwise improper misuse of NICS monitoring by ATF personnel (or contractors of ATF).

Ex. A at 2.  ATF acknowledged plaintiffs' FOIA request by a letter dated August 24, 2021, *see* Ex. B to Compl. [Dkt. # 1-2], and it "proceeded to search for responsive records."  Barnett Decl. ¶ 4.

Having received no further response from ATF, on November 5, 2021, plaintiffs filed this suit to compel the agency to release the requested information.  Compl. at 1, 5.  ATF answered the complaint and then, over the next year-and-a-half, it reviewed 4,559 potentially responsive documents, and it "produced all responsive records in 13 monthly productions."  Barnett Decl. ¶ 6; *see* Def.'s Answer [Dkt. # 5].

On September 6, 2023, ATF emailed its thirteenth production to plaintiffs' counsel.  *Id*. ¶ 8. It was compromised of  "a cover letter and a PDF file" consisting of 115-pages.  *Id.*  Like the previous twelve productions, the production contained emails in which ATF agents submitted "NICS monitoring" requests to the Federal Bureau of Investigation ("FBI").  *Id.* ¶ 13.  The emails showed the "names, email addresses, and sometimes telephone numbers" of the ATF agents, FBI agents, and staff involved.  *Id.* ¶ 15.  Most of the emails also included "the underlying investigative target's name" and discussion of the investigation.  *Id.* ¶ 15.  And each monitoring request also included a "standard form" regarding the individual, or "subject," for whom monitoring was requested.  *Id.* ¶¶ 13, 15.  The forms enabled the requesters to input the following categories of information:

- Submit date
- Requester's name, contact number, and e-mail address
- Case number
- Subject's name, date of birth, gender, race, social security number, state of residence, and place of birth
- FBI number
- State record number
- Monitoring time frame
- Suspected violation(s) of the Gun Control Act or National Firearms Act
- Detailed information about why the subject is under investigation

- Detailed information about the investigation. What does the requester know and how do they know it?

*Id.* ¶ 15. The last two bullet points on the form calling for "detailed information" allow the requester to provide "narrative responses," and some of the responses in the produced documents included: "information furnished by witnesses or confidential sources," *id.* ¶ 15; information from the agency's "Firearms Tracing System" database, *id.* ¶ 19; and information about the "specific law enforcement procedures and techniques" used during the investigation. *Id.* ¶ 31.

In advance of the production, ATF marked multiple pieces of information for redaction pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E). Barnett Decl. ¶ 16. Under Exemption 3, it marked for redaction the "records of specific firearms traces" from the Firearms Tracing System database. *Id.* ¶ 19. Under Exemptions 6, 7(C), and 7(D), it marked for redaction the "personally identifiable information" of ATF agents, FBI agents, agency personnel, and the subjects, associates, and informants involved in the agency's investigations. *Id.* ¶¶ 23–25, 27. Finally, under Exemption 7(E), it marked for redaction information revealing "specific law enforcement procedures and techniques" used during the agency's investigations. *Id.* ¶ 31.

In accordance with the procedure utilized in the previous productions, ATF marked the records to be included in the thirteenth production with "red boxes" outlining the information it intended to redact. *Id.* ¶ 7. The material in each red box was overlaid with text indicating the applicable FOIA exemption. *Id.* The procedure to be followed required the processor to select "Apply" to create a new, redacted document. *Id.* Although the separate, redacted document was created for the thirteenth production, the agency inadvertently emailed plaintiffs a copy of the previous version that still showed red boxes outlining the redactions and the contents of the boxes, not the version that actually applied the redactions. *Id.* ¶¶ 7–8.

On September 8, 2023, two days after the agency released the thirteenth production, plaintiffs' counsel asked ATF's counsel in an email, "[c]an I get a *redacted* version of the final Production #13?" Attachment B to Barnett Decl. [Dkt. # 32-3] (emphasis in original). Fifteen minutes later, ATF's counsel responded, "It seems there was an inadvertent production. Would you please delete any copy that you may have downloaded? ATF will send you a replacement production." Attachment C to Barnett Decl. [Dkt. # 32-3]. Nine minutes later, ATF's counsel sent "the proper version of production 13," containing the permanently applied redactions. Attachment D to Barnett Decl. [Dkt. # 32-3].

On September 10, ATF's counsel asked plaintiffs' counsel to "confirm in writing that [he] deleted any copy of the inadvertent production," noting the "significant privacy interests in the material[.]" Attachment E to Barnett Decl. [Dkt. # 32-3]. The next day, plaintiffs' counsel responded tartly: "I do not have time today to consider much less respond to this request to delete what I was sent." Attachment F to Barnett Decl. [Dkt # 32-3] at 1. ATF's counsel replied, "if you do not confirm deletion of the materials, ATF plans to move for a protective order." *Id.*

The next day, a different attorney emailed ATF's counsel to say that he would "be representing" plaintiffs with respect to the "planned motion for protective order." Attachment H to Barnett Decl. [Dkt. # 32-3] at 1. At that point, plaintiffs had both the redacted version and the inadvertently unredacted version of the thirteenth production in its possession, and one could easily ascertain whether anything had been omitted that did not fall within a FOIA exemption. Yet counsel took the following position:

> [O]ur review of these documents demonstrates that they may, like other documents received in this FOIA, and perhaps to a greater extent, reveal unauthorized or even illegal activity by ATF and the FBI, violating statutory requirements and jeopardizing the constitutional rights of federal firearms licensees and other Americans. Thus, we are concerned that, if we agree to your proposal and destroy the documents in our possession, those

> unauthorized or even illegal activities will be covered up by ATF.  We do not agree voluntarily to be complicit in such a coverup.  You have asked for our position on a protective order.  We oppose . . . .  [T]he error here is the government's alone, and we will resist any effort to make it appear that we have done anything wrong, or that ATF is somehow the "good guy" here by, under the guise of protecting certain private information that it negligently disclosed, attempting to coverup its potential violations of statutes and constitutional rights.

*Id.* at 2.

On September 13, ATF moved for a protective order to shield the "material inadvertently produced" from dissemination, disclosure, or use until the Court decided the merits of its FOIA exemptions.  Def.'s Expedited Mot. for Protective Order [Dkt. # 20] at 1, 7–8.  Plaintiffs opposed the motion.  *See* Pls.' Opp. to Def.'s Mot. for Protective Order [Dkt. # 28] ("Pls.' Opp. to Protective Order").  The Court granted the motion, and it ordered plaintiffs to "temporarily sequester" the inadvertently produced file until a decision regarding the redactions could be made on the merits.  TPO at 1.[1]  Defendant moved for summary judgment on December 8, and the parties fully briefed the motion.  *See* Def.'s Mot.; Pls.' Resp.; Def.'s Reply.

On February 11, 2025, ATF filed a notice of supplemental authority pointing to the D.C. Circuit's decision in *Human Rights Defense Center v. United States Park Police*, 126 F.4th 708 (D.C. Cir. 2025), and the parties were directed to file submissions addressing its impact on the dispute.  *See* Def.'s Notice of Suppl. Authority [Dkt. # 35]; Minute Order (Mar. 12, 2025); Pls.' Suppl. Mem. [Dkt. # 37]; Def.'s Suppl. Mem. [Dkt. # 38].  Plaintiffs also moved to lift the Court's protective order in light of the Circuit's ruling.  *See* Pls.' Mot.  That motion is also fully briefed.  *See* Def.'s Opp.; Pls.' Reply.  The Court then ordered ATF to submit the unredacted thirteenth

---

1      The order did not limit plaintiffs' use of the version of the thirteenth production with the redactions properly applied.

production to the Court for *in camera* review, *see* Minute Order (Apr. 11, 2025), and ATF submitted the materials under seal. *See* Sealed Doc. [Dkt. # 41].

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

When a federal agency receives a request for records under the Freedom of Information Act, the statute requires it to disclose the requested information unless it falls into one of FOIA's

nine exemptions.  5 U.S.C. §§ 552(a)(3)(A), (b)(1)–(9).  In a "typical FOIA case concerning the withholding of requested documents," the court decides "the applicability of a claimed FOIA exemption," *Al-Fayed v. Cent. Intel. Agency*, 254 F.3d 300, 308 (D.C. Cir. 2001), and if it determines that the information does not fall within the exemption, the requester is entitled to it. 5 U.S.C. § 552(a)(4)(B).

This is not the typical case.  During the process of responding to plaintiffs' FOIA request, the agency inadvertently produced a set of documents that were marked for redaction, but not actually redacted.  Barnett Decl. ¶ 7.  The agency maintains in its motion for summary judgment that all of the information designated for redaction falls within Exemptions 3, 6, 7(C), 7(D), and 7(E), Def.'s Mot. at 4–15, and plaintiffs do not dispute that assertion.  Plaintiffs "take no position" on the FOIA exemptions; indeed, they announce that they "have no interest in the vast majority of the . . . information ATF disclosed."  Pls.' Resp. at 6.  In other words, plaintiffs do not claim that they are entitled to any of the information the agency meant to withhold, and having seen it, they are not suggesting that they have any reason to disseminate the bulk of it further.  Nonetheless, they object to any order extending restrictions on the use of the material on principle.

The agency asks the Court to order plaintiffs to:  (1) "sequester the September 6, 2023, inadvertently produced FOIA records and the contents of those records"; and (2) "not disseminate, disclose, or use for any purpose those records or the contents of those records."  Def.'s Mot. at 19. Plaintiffs argue that the D.C. Circuit's recent opinion in *Human Rights Defense Center v. United States Park Police* bars the Court from ordering that relief and requires it to lift the temporary protective order.  *See* Pls.' Suppl. Mem.; Pls.' Mot.  They also contend that an order sequestering the inadvertent production would constitute an unconstitutional prior restraint in violation of the First Amendment.  Pls.' Resp. at 27–32.

The Court finds that defendant's motion and supporting declaration and its own review of the materials *in camera* confirm that all the information marked for redaction in the inadvertent production falls properly within a FOIA exemption. Therefore, defendant's motion for summary judgment in its favor will be granted on the propriety of the exemptions. This also means that the Court's interim order restricting the use of the information that defendant meant to redact until the legitimacy of the redactions had been determined expires under its own terms, TPO at 1,[2] and that the challenge to that order is now moot.

The Court also finds that it has equitable authority to grant ATF's requested relief to bar plaintiffs from using or disseminating the inadvertently produced information. Plaintiffs have already agreed to destroy the majority of the information at issue, which is properly exempt under Exemptions 6, 7(C), and 7(D). Pls.' Reply at 23. As for the rest of the information, *Human Rights Defense Center v. United States Park Police* is distinguishable and does not control the instant suit, and both Supreme Court and D.C. Circuit precedent regarding the Court's equitable authority under FOIA support a remedy that bars the use of FOIA-exempted information.

**I.    All of the information marked for redaction falls properly within the FOIA exemptions claimed by the ATF.**

The ATF marked several sets of information for redaction in the thirteenth production, and its motion for summary judgment argues that those redactions were proper under FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E). Def.'s Mot. at 4–15. Plaintiffs have "repeatedly" stated

---

2    Plaintiffs argued that the Court lacked authority to let the temporary protective order stand. *See* Pls.' Suppl. Mem. at 2–5.

that they "do not challenge" the "legality" of the redactions, Pls.' Resp. at 5–6,[3] and indeed, their

opposition does not argue against any of the exemptions that ATF claimed.  *Id.* at 6–33; *see id.* at

6 ("ATF spends the majority of its briefing arguing that various redactions . . . would have been

appropriate under various FOIA exemptions . . . .  Plaintiffs take no position with respect to these

arguments.").

Although plaintiffs make no effort to challenge the agency's FOIA exemptions, "[u]nder

the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for

want of opposition."  *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016).

"The burden is always on the movant to demonstrate why summary judgment is warranted," and

"[t]he nonmoving party's failure to oppose summary judgment does not shift that burden."  *Id.*,

quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015).  Therefore, the Court

must still determine whether the information marked for redaction falls properly within the FOIA

exemptions claimed, even though plaintiffs do not contest the exemptions.

The Court has reviewed the agency's declaration in support of its motion, as well as the

unredacted version of the thirteenth production *in camera*, and it concludes that all of the

information ATF marked for redaction was properly exempt under FOIA Exemptions 3, 6, 7(C),

7(D), and 7(E).

---

3       *See also* Joint Status Report [Dkt. # 31] at 2 ("Plaintiffs do not intend to challenge the
FOIA redactions that could have been claimed, but were not made, on Production 13."); Pls.' Resp.
at 1 n.1 (explaining that plaintiffs "style[d]" their opposition to defendant's motion for summary
judgment as a "Response" rather than an "Opposition" because "the only disputed issue between
the parties is Defendant's motion for a permanent protective order . . . not summary judgment");
Pls.' Resp. to Def.'s Statement of Undisputed Material Fact [Dkt. # 33-1] at 1 ("Plaintiffs generally
do not contest ATF's Statement of Material Facts . . . ."); Pls.' Suppl. Mem. at 1 n.1 ("The only
disputed issue between the parties is Defendant's Motion for Protective Order . . . , not summary
judgment."); Pls.' Reply at 2 n.2 ("Plaintiffs have not contested any of Defendant's claims of
exemption. . . .  Defendant can invoke all the FOIA exemptions it wants.").

### A. Exemption 3

Exemption 3 authorizes agencies to withhold information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The statute must either: (1) "require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or (2) "establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld." *Id.* § 552(b)(3)(A)(i)–(ii). And if the statute was "enacted after the date of enactment of the OPEN FOIA Act of 2009," it must "specifically cite[] to" FOIA. *Id.* § 552(b)(3)(B). To justify its withholding, the agency "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009).

ATF invoked Exemption 3 to withhold information regarding "specific firearms traces" derived from ATF's Firearms Tracing System ("FTS") database, most of which appears in the NICS monitoring request forms to explain "why [ATF's] subject [was] under investigation." Barnett Decl. ¶ 19. The agency asserts that the Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat. 552 (2011) ("the Act of 2012"), bars it from disclosing the contents of the Firearms Tracing System. Def.'s Mot. at 5.

Congress restricted the ATF's ability to disclose firearms tracing information in 2003, when it passed the Tiahrt Amendment to the Consolidated Appropriations Resolution of 2003, Pub. L. No. 108-7, 117 Stat. 11 (2003). *See id.* § 644 ("No funds appropriated under this Act . . . shall be available to take any action based upon any provision of [FOIA] with respect to records collected or maintained . . . in connection with . . . the tracing of a firearm[.]"); Barnett Decl. ¶ 18. Iterations of this restriction have appeared in most, if not all, of the consolidated

appropriations acts since 2003,[4] until its most recent version in the Act of 2012. The current Act requires:

> That, during the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives . . . pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section, except to: (1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose; . . . and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding . . . .

Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat. 552, 609–610.

Based on this language, most courts in this district have held that the government may withhold trace information from the Firearms Trace System under Exemption 3. *See, e.g.*, *Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*, 74 F. Supp. 3d 158, 172–77

---

4    *See* Consolidated Appropriations Act of 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3128–29 (2009) ("[N]o funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives . . . ."); Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, 121 Stat. 1844, 1903–04 (2007) (same); Consolidated Appropriations Act of 2005, Pub. L. No. 108-447, 118 Stat. 2809, 2859–60 (2004) ("[N]o funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives . . . .").

(D.D.C. 2014); *Higgins v. U.S. Dep't of Just.*, 919 F. Supp. 2d 131, 145 (D.D.C. 2013); *Watkins v. Bureau of Alcohol, Tobacco & Firearms*, Civ. Action No. 04-800, 2005 WL 2334277, at *1 (D.D.C. Sept. 1, 2005); *McRae v. U.S. Dep't of Just.*, 869 F. Supp. 2d 151, 163 (D.D.C. 2012). And although one court has held that the ATF cannot rely on the Act because it does not "expressly" reference FOIA, *see Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 67 F. Supp. 3d. 290, 300–01 (D.D.C. 2014), the Court is persuaded by the reasoning in *Abdeljabbar* that:

> [T]he disclosure prohibitions set forth by Congress in the 2005 and 2008 appropriations bills are still effective prospectively and beyond those fiscal years as a permanent prohibition, until such time as Congress expresses the intent to repeal or modify them. . . . Congress's uninterrupted use of this language in appropriations bills after 2009 supports the conclusion that Congress did not intend for the judiciary to depart from this long-standing position.

74 F. Supp. 3d at 175–76.  For their part, plaintiffs offer no reason as to why the Court should come to a contrary conclusion; they do not argue against the agency's application of Exemption 3 at all.

The Court has observed the information at issue and confirmed that it contains the firearms tracing information that the ATF is barred from publicly releasing.  Therefore, the Court finds that the agency's invocation of Exemption 3 is proper.

## B.  Exemptions 6, 7(C), and 7(D)

ATF invoked Exemptions 6, 7(C), and 7(D) for the bulk of the information it marked for redaction:  the personal information of ATF and FBI agents, agency personnel, and the subjects, associates, and informants involved in the agency's investigations.  Barnett Decl. ¶¶ 23–25, 27.

Exemptions 6 and 7(C) serve similar goals.  Exemption 6 shields any "personnel and medical files and similar files" where "disclosure . . . would constitute a clearly unwarranted

invasion of personal privacy." 5 U.S.C. § 552(b)(6). The exemption is "construed broadly to cover essentially all information sought from Government records that 'appl[y] to a particular individual,'" *Pinson v. U.S. Dep't of Just.*, 202 F. Supp. 3d 86, 99 (D.D.C. 2016), quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982), including "personal information, such as names and addresses." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015), quoting *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006). Similarly, Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(c).

Although the application of both exemptions "turns on a balance of the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny," *CEI Wash. Bureau, Inc. v. U.S. Dep't of Just.*, 469 F.3d 126, 128 (D.C. Cir. 2006), (citation omitted), the D.C. Circuit has held that Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6. *Am. C.L. Union v. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (citations omitted). So "when an agency seeks to withhold records 'compiled for law enforcement purposes' as implicating personal privacy, only Exemption 7(C) need be considered, since 'all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C.)'" *Battle Born Invs. Co., LLC v. U.S. Dep't of Just.*, Civ. Action No. 24-067, 2024 WL 5246515, at *4 (D.D.C. Dec. 30, 2024), quoting *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

ATF has shown that its redactions were appropriate under Exemption 7(C). As the agency's declarant explained, ATF "applied minimal redactions as necessary to prevent the disclosure of information that might reveal the identities of third parties" within the production,

14

including: (1) the personally identifiable information of ATF and FBI agents, and agency staff; (2) the social security numbers, birth dates, addresses, cell phone numbers, and family relationships of the subjects of agency investigation; and (3) the identities of cooperating sources who provided information to the government. Barnett Decl. ¶ 27. There is a well-recognized and substantial privacy interest in withholding the identities of the law enforcement officers and support personnel conducting investigations. *See, e.g.*, *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980). The Court of Appeals has also held that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including suspects, witnesses, and informants, *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003), and that such third-party information is "categorically exempt" from disclosure in the absence of an overriding public interest. *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894, 896 (D.C. Cir. 1995).

Further, the agency's claimed redactions under Exemption 7(D) were proper. Exemption 7(D) protects from disclosure information compiled for law enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D). A source is "confidential" within the meaning of Exemption 7(D) if they "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995). Here, the agency's declaration explains that the sources it redacted had provided tips to the ATF "regarding potential illegal acquisition of firearms . . . with the implied assurance of confidentiality." Barnett Decl. ¶ 25. The sources "have ongoing relationships with ATF" and "would likely be subject to retaliation

for that cooperation," so it is reasonable to infer that they provided information to the agency with the understanding that their identities would be kept confidential.  *Id.*

Again, plaintiff does not contest any of ATF's arguments regarding the application of Exemptions 6, 7(C), or 7(D), and the Court's review confirms the agency's assertions.  Therefore, the Court finds that ATF properly claimed these exemptions.

### C.  Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Exemption 7(E) "sets a relatively low bar for the agency to justify withholding."  *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 42 (D.C. Cir. 2011).  "Rather than requiring a highly specific burden of showing how the law will be circumvented," it "only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  *Mayer Brown LLP v. Internal Revenue Serv.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (internal quotation marks and citations omitted).

ATF's declarant stated that the information claimed under Exemption 7(E) "reveals specific law enforcement procedures and techniques" used to "identify certain individuals as investigative subjects."  Barnett Decl. ¶ 31.  The information appears in the sections of the NICS forms asking for "why" the subject is under investigation and "how" ATF knows information about the subject.  *Id.*  The Court agrees with ATF that disclosure of how the agency finds its

investigative subjects could logically enable individuals to "circumvent" those techniques, *id.*, so it finds that the agency's claim under Exemption 7(E) is proper.[5]

### D. Segregability

"[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004), quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). ATF's declaration explains that responsive records were reviewed "on a line-by-line and page-by-page basis" to identify reasonably segregable information, and that all "meaningful segregable information was disclosed" to plaintiffs. Barnett Decl. ¶ 32. The Court has also reviewed the un-redacted version of the production, and it came to the same conclusion. Therefore, it finds that the agency's redactions satisfy the segregability requirement.

### II.    The Court has authority to grant ATF's requested order.

What is left to determine is what, if anything, should happen now. Because the unredacted copy of the thirteenth production was inadvertently produced to plaintiffs, ATF asks the Court for an order directing plaintiffs and their counsel to: (1) "sequester the . . . inadvertently produced

---

5      Citing *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 64 (D.D.C. 2014), plaintiffs assert that the ATF cannot withhold information regarding its law enforcement techniques and procedures under Exemption 7(E) because those "techniques and procedures . . . are unlawful and unconstitutional." Pls.' Resp. at 26 (emphasis in original). Indeed, plaintiffs spend a large portion of their brief arguing that the ATF and FBI's use of the NICS is illegal. *Id.* at 12–26. But plaintiffs have not brought a suit against the agencies challenging the legality of the use of NICS; they chose to bring a claim under the Freedom of Information Act to enforce their request for information about the ATF's use of NICS. Compl. ¶¶ 16–18. FOIA is a statute concerned with the disclosure of information in the government's possession.

At any rate, *Conservation Force* is not on point. In that case, the agency withheld information pursuant to the attorney-client privilege under Exemption 5, and the court analyzed whether the crime-fraud exception to the privilege applied. 66 F. Supp. 3d at 64; *see id.* ("Plaintiff has failed to prove that any crime or fraud was committed here, let alone that the communications at issue were made with an intent to further the unlawful act."). This case involves withholdings under Exemption 7(E), which does not recognize an exception for crime or fraud.

FOIA records and the contents of those records"; and (2) "not disseminate, disclose, or use for any purpose those records or the contents of those records."  Def.'s Mot. at 19; Def.'s Reply at 14.

Plaintiffs take issue with the remedy only as it pertains to "small portions of [the] unredacted information."  Pls.' Resp. at 6.  They do not "have any interest in" and "agree to destroy" such records related to personally identifying information of the ATF and FBI agents, agency staff, and the subjects, associates, and informants of ATF investigation.  *Id.* at 23–24.  But they do challenge the issuance of an order limiting the use of the unredacted information "related to the FBI and ATF's warrantless NICS Monitoring Program."  *Id.* at 6, 15; *see id.* at 16–21 (arguing that the public has significant interest in learning about how the "NICS Monitoring Program" violates statutory prohibits and constitutional rights).

Since plaintiffs have already agreed to destroy the personal information that the agency redacted under Exemptions 6, 7(C), and 7(D), the Court will order it to do so.  As to the rest of the information marked for redaction under Exemptions 3 and 7(E), the Court finds that it has the authority to issue an order barring that information from dissemination or use.

> **a.** ***Human Rights Defense Center v. United States Park Police* does not bar the Court from granting relief.**

Plaintiffs argue that *Human Rights Defense Center v. United States Park Police ("HRDC")*, 126 F.4th 708 (D.C. Cir. 2025), "squarely rejected the notion" that district courts have inherent authority to limit the use or dissemination of inadvertently disclosed FOIA material, and therefore, the Court cannot grant ATF's relief.  Pls.' Suppl. Mem. at 5; Pls.' Mot. at 3–7. Defendant counters that *HRDC* does not bar the relief sought here because:  (1) it is distinguishable from this case; and (2) the Court can rely on its "equitable power" under FOIA, as opposed to its "inherent authority," to enforce its judgment.  Def.'s Suppl. Mem. at 4–5; Def.'s Opp. at 2–3.

In *HRDC*, the plaintiff submitted FOIA requests to the Park Police for records of certain "claims or lawsuits brought against the agency or its employees." 126 F.4th at 714. The agency Police released the records and "withheld the names of four police officers" under Exemption 6. *Id.* But "due to errors in its redaction process," the Park Police accidentally disclosed two names of private claimants that also should have been withheld under Exemption 6. *Id.* at 713–14. The district court held that the Exemption 6 withholdings were justified as to both the officers and the private claimants, and it "invoked its inherent authority to manage judicial proceedings . . . to issue a clawback order for the erroneously produced names." *Id.* at 712, 714–15.

The D.C. Circuit reversed both rulings. First, it held that the withholding of the four officers' names was improper because the agency failed to satisfy "its burden to show that disclosure . . . would compromise a substantial privacy interest." *Id.* at 715. The Court observed that the Park Police's *Vaughn* index and supporting declarations were "wholly conclusory," lacked "even minimal substantiation of the officers' privacy interest or the potential harm from disclosing their names," and "merely recite[d] the elements of the analysis for whether Exemption 6 applie[d]." *Id*. at 715–16.

Then, without commenting on whether the inadvertently produced private citizens' names fell under Exemption 6, the Court vacated the clawback order. 126 F.4th at 719–720. It took issue with the lower court's use of its inherent authority to manage judicial proceedings as a "mechanism" for compelling the return of inadvertently produced information when FOIA itself did not provide for that remedy. *Id.* at 717. It stated that "[t]he court's invocation of an inherent power must" be either: (1) "documented by historical practice"; or 2) "supported by an irrefutable showing that the exercise of an undoubted authority would otherwise be set to naught." *Id.* at 718, quoting *Cobell v. Norton*, 334 F.3d 1128, 1141 (D.C. Cir. 2003) (internal quotation marks

omitted).  The Park Police did not argue that clawback was a "documented historical practice," so the Court only analyzed whether it was "necessary to buttress the district court's undoubted authority over FOIA litigation."  *Id.* at 718 (internal quotation marks omitted).

The Circuit found that the order was not necessary, rejecting the agency's argument that it was proper given the lower court's ruling that the inadvertently produced names fell under Exemption 6.  *Id.* at 718–19.  The Circuit explained that "necessary" orders were "limited to those which . . . are necessary to the exercise of all others," and it then listed the "powers" previously "recognized as necessary," including:  admitting members to the bar, disciplining bar members, punishing contempt of court, vacating judgments based on fraud on the court, and punishing bad-faith or vexatious conduct.  *Id.* at 718, citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991) (internal quotation marks omitted).  Because, in the Circuit's view, the "primary function" of the clawback order at issue was "not to support a core judicial authority, but to fill a perceived hole in the FOIA statute by enabling the government to put the proverbial cat back in the bag," the Court held that it was an improper use of inherent authority.  *Id.* at 718–19.

The Court went on to note that the clawback remedy could not "be squared with the terms" or "structure" of FOIA, given that the statute does not explicitly enable an agency to seek an order correcting an inadvertent disclosure.  126 F.4th at 719.  The Court opined that "Congress presumably acted deliberately in omitting general clawback authority from FOIA," and that, "[u]nlike litigation, which is an adversarial process to determine the parties' rights and obligations, FOIA is a primarily administrative regime designed to advance governmental transparency."  *Id.*  Still, the Court observed:

> Importantly, the information at issue here is not subject to any independent legal prohibition on disclosure such as applies to classified documents, and we express no opinion on how any such prohibition could affect the analysis.

20

*Id.*

One problem with applying *HRDC* to the facts of the instant case is that the Circuit's analysis on whether the agency properly invoked Exemption 6 referred only to the "officer names" redacted by the agency, *id.* at 715–17, not the private claimants' names that were inadvertently produced. As to that information, the Circuit moved directly to the question of whether the lower court had the authority to issue the clawback order at all, without deciding whether Exemption 6 applied to the names in the first place. *Id.* at 718–19. So, it is not clear whether the Court's discussion about the clawback order was meant to reach inadvertently disclosed information that is properly, or as in this case, concededly, exempt.

Furthermore, a close reading of *HRDC* reveals several important distinctions between that case and this one. First, *HRDC* involved a plaintiff that was disputing the agency's withholdings under FOIA, so the Circuit did not deal with the circumstances here: plaintiffs who did not contest the agency's FOIA withholdings at all, and who have "no interest" in the majority of the information at issue. Pls.' Resp. at 6. Given *HRDC*'s determination that the Park Police failed to support its withholdings, it makes sense that clawback would not be available, whether or not it was a proper exercise of authority, because the agency was not entitled to withhold the information in the first place. That is not the case here. As the Court has detailed, everything marked for redaction by the ATF was properly exempt, and the plaintiffs have agreed to destroy most of the inadvertently produced information.

Second, the majority of the information that plaintiffs seek to retain and to be able to disseminate falls under Exemption 3, which authorizes ATF to withhold information that is "specifically exempted from disclosure" by the Consolidated and Further Continuing Appropriations Act of 2012. 5 U.S.C. § 552(b)(3). *HRDC* specifically carved Exemption 3 out of

its ruling, noting that the information at issue was "not subject to any independent legal prohibition on disclosure" and that it expressed "no opinion on how any such prohibition could affect the analysis." 126 F.4th at 719. So, by its own language, the case does not bar the Court from granting relief as to the Exemption 3 information, and it would be consistent with FOIA and the Act of 2012 to restrain plaintiffs from disseminating such material.

Given the differences between the posture of this case and what the Court addressed in *HRDC*, that opinion does not control the outcome here.[6]

### III.    The law supports the Court's exercise of its equitable powers under FOIA to fashion a remedy in accordance with Exemptions 3 and 7(E).

As far as the Court is aware, no court in this district has invoked its equitable power to bar a plaintiff from disseminating or using information obtained by virtue of an agency's inadvertent production of FOIA-exempted information. The Freedom of Information Act itself says very little about the remedies available under the statute. Its only language regarding the court's authority is section 552(a)(4)(B), which vests "the district court" with "jurisdiction to enjoin the agency from

---

[6]    The Court of Appeals in *HRDC* opined that the district court lacked inherent authority to manage the case before it because "*[u]nlike litigation*, which is an adversarial process to determine the parties' rights and obligations, FOIA is a primarily administrative regime designed to advance governmental transparency." 126 F.4th at 719 (emphasis added). In this Court's view, that sentence ignores the fact that in many of the FOIA cases pending in this courthouse, the plaintiff had to bring a lawsuit to activate the administrative process, and that often, it takes the court's oversight and involvement to bring it to its conclusion. Once a lawsuit has been filed, the relationship between the parties is not simply governed by agency regulations; it is the district court that establishes the schedule for the review and production of records by issuing orders. That is litigation. And during FOIA litigation, as in other civil litigation, the court may be called upon to manage and resolve disputes between the parties, or to direct them to take certain action by issuing other orders. Indeed, the FOIA statute explicitly recognizes this fundamental distinction between FOIA compliance as an administrative matter and FOIA litigation since it provides for an award of attorneys' fees and litigation costs when a plaintiff has "substantially prevailed" in an action before the Court. 5 U.S.C. § 552(a)(4)(E)(i). For those reasons, this Court takes issue with the reasoning underlying that portion of the *HRDC* decision. But for the purposes of its ruling here, the Court is adhering to Circuit authority, and its ruling with respect to the protective order is not predicated on "inherent authority."

withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  But both the Supreme Court and the D.C. Circuit have commented on the relationship between FOIA and the court's equitable powers, and the extent to which a district court can fashion equitable remedies under the statute.

In *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974), a consolidation of three cases, the FOIA requesters were companies that had contracts with the United States that were subject to renegotiation under the Renegotiation Act.  *Id.* at 3.  During the negotiation process, the government took the position that the companies had "realized excessive profits" under their contracts, and when it refused to provide the documents supporting that determination, each company sought the information through FOIA requests.  *Id.* at 4–5.  After the government failed to respond to the requests, the companies filed suit under FOIA to compel the release of the information, and to enjoin "any further renegotiation proceedings" until the production.  *Id.* at 5–6.  The district courts enjoined the renegotiation proceedings for each company.  *Id.* at 6–8.

Although the Supreme Court ultimately found "it unnecessary" to decide whether the district court could enjoin the negotiation proceedings because the companies had failed to exhaust their administrative remedies under the Renegotiation Act, *id.* at 20, it did comment on FOIA's effect on the court's equitable power to do so.  First, the Court noted FOIA's purpose of "opening administrative processes to the scrutiny of the press and general public," *id.* at 17, and the statute's language conferring "jurisdiction to grant injunctive relief of a described type, namely, 'to enjoin the agency from withholding agency records . . . improperly withheld from the complainant.'"  *Id.* at 18, citing 5 U.S.C. § 522(a)(3).  It then explained that while the statute's purpose and language "might suggest" that "compelled production was intended to be the exclusive enforcement method," there was "little to suggest" that FOIA "limit[s] the inherent powers of an equity court."

*Id.* at 19–20.  In particular, the Court was persuaded that enjoining the release of information was not the "exclusive remedy" under FOIA because of: "[t]he broad language of the FOIA, with its obvious emphasis on disclosure and with its exemptions carefully delineated as exceptions"; "the truism that Congress knows how to deprive a court of broad equitable power when it chooses so to do"; and "the fact that [FOIA], to a definite degree, makes the District Court the enforcement arm of the statute." *Id.* at 19–20.

The D.C. Circuit has provided further analysis on the extent and nature of the court's remedial power in FOIA cases, which it summarized and applied in *Citizens for Responsibility and Ethics in Washington v. United States Department of Justice* ("*CREW*"), 846 F.3d 1235 (D.C. Cir. 2017).

In *CREW*, the plaintiff sued to compel the Office of Legal Counsel ("OLC")'s compliance with FOIA's "reading-room" provision, which "requires agencies to 'make available for public inspection . . .' certain records, including . . . 'statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register.'" *Id.* at 1239, quoting 5 U.S.C. § 552(a)(2).  The plaintiff asserted that OLC opinions were subject to the reading-room provision, and it sought an injunction directing OLC to disclose all such documents. *Id.* at 1239–40.  But in addition to that primary form of relief, the requested injunction had four additional "features":

> (1) it would apply prospectively . . . to documents not yet created; (2) it would impose an affirmative obligation to disclose . . . documents regardless of whether someone specifically requests a given document; (3) it would mandate that OLC make documents available to the *public*, as opposed to just [the plaintiff]; and (4) it would require OLC to make available to the public an index of all such documents.

*Id.* at 1240 (emphasis in original).  Concerned that FOIA did not give a district court the power to order the requested relief, the plaintiff sued under section 704 of the Administrative Procedure

Act, which authorizes review of agency actions "for which there is no other adequate remedy in a court." *Id.* at 1241, quoting 5 U.S.C. § 704. But the district court dismissed the case because it found that FOIA would provide for the plaintiff's requested remedy. *Id.* at 1238, 1240.

On appeal, the D.C. Circuit considered whether the plaintiff could obtain the relief it was seeking under FOIA. *Id.* at 1241–42. First, it drew lessons from the Supreme Court's opinion in *Renegotiation Board*:

> FOIA section 552(a)(4)(B) vests courts with broad equitable authority. True, as the Supreme Court explained in *Renegotiation Board v. Bannercraft Clothing Co.*, . . . that provision "explicitly confers jurisdiction to grant injunctive relief of a described type, namely, 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" . . . But as the Court made clear in the same decision, Congress did not intend that language "to limit the inherent powers of an equity court" in FOIA cases. . . . "Once invoked, the scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies." . . . This is especially so where, as here, "federal law is at issue and 'the public interest is involved,' as a federal court's 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'"

*Id.* at 1241–42 (citations, alterations, and quotation marks omitted).

The Court then explained that its own "case law reflects the wide latitude courts possess to fashion remedies under FOIA, including the power to issue prospective injunctive relief." *Id.* at 1242. It pointed to *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988), where the Court said it was confronted with the Air Force's "repeated failure to disclose documents in response to" the plaintiff's valid FOIA requests. *CREW*, 846 F.3d at 1242, citing *Payne*, 837 F.2d at 487. The Air Force eventually complied with the requests during the lawsuit, but because the government exhibited a pattern of "repeated delays" and the plaintiff had an "undeniable right" to the requested information, the Court of Appeals instructed the district court to: "evaluate the likelihood that the Air Force will return to its illicit practice of delay in the absence of an

injunction" and to "consider the propriety of injunctive relief" to prevent future delay.  *Payne*, 837 F.2d at 488, 495.

*CREW* then pointed to *Morley v. Central Intelligence Agency*, 508 F.3d 1108, 1120 (D.C. Cir. 2007), as an example where it "recognized courts' power to order relief beyond the simple release of extant records."  *CREW*, 846 F.3d at 1242.  In *Morley*, the Court determined that the agency had failed to search for responsive material in a portion of records that were likely to be responsive.  508 F.3d at 1119–20.  Because FOIA has a "policy of full agency disclosure," and a refusal to release documents for reasons unrelated to the FOIA exemptions would constitute withholding, the Court ordered the agency to conduct a more adequate search of its records, *id.* (internal citation and quotation marks omitted), even though FOIA does not specifically provide for that remedy.

*CREW* cautioned, though, that "[a]lthough broad, courts' remedial authority under section 552(a)(4)(B) is not boundless," 846 F.3d at 1242, and it pointed to two previously recognized limits.  First, it noted the Supreme Court's holding in *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980), that "federal courts have no authority to order the production" of records no longer in the agency's possession.  *Id.* at 139.

Then it described the Circuit's decision in *Kennecott Utah Copper Corp. v. United States Department of the Interior*, 88 F.3d 1191 (D.C. Cir. 1996).  In that case, the plaintiff sought an order requiring an agency to publish its regulations in the Federal Register in accordance with section 552(a)(1) of FOIA.  *Id.* at 1201–02.  Although that section requires agencies to "publish . . . substantive rules of general applicability," 5 U.S.C. § 552(a)(1)(D), the Circuit looked to the remedial provision of FOIA to determine whether the relief sought was proper, and the Court found that it could not order publication.  *Kennecott*, 88 F.3d at 1202–03.  The remedial provision

authorizes courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from complainant." 5 U.S.C. § 552(a)(4)(B). The Court reasoned that the language focusing on the "production" of records to "the complainant" was aimed at "relieving the injury suffered by the individual complainant, not by the general public," so it could not order the publication of regulations to the public. *Kennecott*, 88 F.3d at 1202–03.[7]

After that discussion, the Court held in *CREW* that the district court had authority under FOIA to grant two of the forms of relief requested by the plaintiff: a prospective injunction to disclose OLC opinions that had not yet been created, and an affirmative duty to disclose regardless of whether the plaintiff submitted a FOIA request. *CREW*, 846 F.3d at 1242. But, relying on *Kennecott*, it held that FOIA did not authorize the court to order OLC to make documents available to the public at large, as opposed to just the plaintiff. *Id.* at 1243.

Considering that authority, the Court finds that it falls within its equitable powers under FOIA to fashion a remedy that would bar the plaintiff from publishing inadvertently disclosed information that falls squarely within Exemptions 3 and 7(E). The Freedom of Information Act vests the district court with "jurisdiction" to settle disputes brought under the statute. 5 U.S.C. § 552(a)(4)(B). Although section 552(a)(4)(B) states that courts can "enjoin" an agency from withholding records, the Supreme Court recognized in *Renegotiation Board* that enjoining the agency is not the "exclusive" power under the statute, and that the language of that provision does not "limit" the Court's equitable power to grant other relief. 415 U.S. at 20. While FOIA is a disclosure statute, Congress included nine exemptions that authorize the government to withhold

---

7      The Court acknowledged, though, that "it might seem strange for Congress to command agencies to 'currently publish' . . . documents, without in the same statute providing courts with power to order publication." *Kennecott*, 88 F.3d at 1202.

information, to advance a number of important interests. 5 U.S.C. §§ 552(b)(1)–(9). The exemption at issue here, Exemption 3, makes it clear that FOIA disclosure cannot frustrate other statutes that mandate against dissemination. And Exemption 7(E), which is involved to a lesser extent, gives special protection to law enforcement procedures and techniques to guard against future circumvention of the law. These interests, which were absent in *HRDC*, support the injunction. Also, since this case involves the agency's attempt to withhold information that the statute expressly exempts from public disclosure, it does not present the problem posed in *Kennecott Utah Copper Corp.*, where the court was being asked to take action that fell well outside the statutory scheme.

Therefore, the Court will exercise its equitable jurisdiction to enter an order barring the use of inadvertently disclosed information covered by Exemption 3 and 7(E).

**IV.     The relief does not violate plaintiffs' First Amendment rights.**

Finally, plaintiffs contend that a protective order forbidding the dissemination of the inadvertently released information constitutes "a classic prior restraint" in violation of the First Amendment. Pls.' Opp. to Protective Order at 19.

"The term prior restraint is used to describe . . . judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal quotation marks and citation omitted). A "classic" case of prior restraint involves a governmental actor seeking a temporary restraining order or permanent injunction to prevent the news media from publishing specific information. *Id.* at 550; *see, e.g.*, *New York Times Co. v. United States*, 403 U.S. 713 (1971) (featuring the President's attempt to secure a permanent injunction preventing the publication of the Pentagon Papers after a whistleblower covertly shared them with the news media); *Near v.*

*Minnesota ex rel. Olson*, 283 U.S. 697 (1931) (featuring local government officials seeking to permanently enjoin a local newspaper's publication of periodicals critical of the government).

This case does not present an unconstitutional prior restraint. "As a general rule, citizens have no first amendment right of access to traditionally nonpublic government information," and therefore "[a] litigant seeking release of government information under FOIA . . . relies upon a statutory entitlement – as narrowed by statutory exceptions – and not upon his constitutional right to free expression." *McGehee v. Casey*, 718 F.2d 1137, 1147 (D.C. Cir. 1983). Again, plaintiffs did not contest the ATF's claimed FOIA exemptions, and the Court has already found that the information was properly exempt under the statute. So, because plaintiffs do not have a right to the material found to be exempt under Exemptions 3 and 7(E) in the first place, the Court's order sequestering it is not a violation of their First Amendment rights.

## CONCLUSION

For the reasons stated above, the Court will **GRANT** defendant's motion for summary judgment [Dkt. # 32], and it will **DENY AS MOOT** plaintiffs' motion to lift the temporary protective order [Dkt. # 36]. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: July 23, 2025